Methodist Episcopal Church South, of Vicksburg *v.* Mayor and Aldermen of Vicksburg.

1. CORPORATIONS — LIABILITY — IMPLIED CONTRACT. — At common law a corporation could not manifest its intentions by any personal act or oral discourse, and that it spoke and acted only by its common seal. This rule has been relaxed and corporations can now be bound by contracts made by their agents, though not under seal, and also on implied contracts, to be deduced by inference · from corporate acts, without either a vote or deed or in writing. The doctrine of implied municipal liability to all cases where money or property of a party is received under such circumstances, that the general law, independent of express contract, imposes the obligation upon the city to do justice with respect to the same. If the city receives money or property which does not belong to her, it is her duty to restore it to the true owner, or if used by her, to render an equivalent to the true owner; from the like general obligation, the law, which always intends justice, implies a promise.

2. SAME — IMPLIED CONTRACT BY AN AGENT OR SERVANT. — When it is sought to render a municipal corporation liable for the act of servants or agents, a cardinal inquiry is, whether they are the servants or agents of the corporation. If the corporation appoints or elects them and can control them in the discharge of their duties, can continue or remove them, can hold them responsible for the manner in which they discharge their trust, and if those duties relate to the exercise of *corporate* powers, and are for the peculiar benefit of the corporation in its local or special interest, they may be justly regarded as its agents or servants, and the *maxim of respondeat superior applies.* 2 Dillon, 772.

ERROR to the Circuit Court of Warren County.    Hon. GEO. F. BROWN, Judge.

Plaintiff in error brought suit in the circuit court of Warren county at the June term, 1869, thereof, to recover one thousand

dollars, the value of six thousand brick, alleged to have been taken and used by the defendant. The case was tried at the December term, 1872, and resulted in a judgment in favor of defendants, and the case comes to this court on writ of error.

The following is assigned for error, to wit:

1. The circuit court erred in sustaining defendant's objections to the statements of M. Murphy, and also the statements of Mayor Crunp.

2. The court erred in giving judgment for defendants upon the evidence.

3. The court erred in refusing motion to grant a new trial.

*M. Marshall*, for plaintiff in error, filed an elaborate printed brief.

*Buck & Clark*, for defendant in error:

The manner in which the plaintiff sought to arrive at this as a proper charge against the city, was *neither certain* nor capable of being rendered so. They took the measurement of the building as it stood, not allowing for 'openings, and then calculated that this number of sound brick remained after the burning, then calculated that the city carts got them all in 1862, five or six years after the church was destroyed by fire. No witness did or could state how many bricks were removed by the city carts. We cannot see how the judge or jury could determine upon such vague and hypothetical statements, what, if any, claim plaintiff had against the city.

Notwithstanding the character of the parties to this litigation, the plaintiffs are entitled to no special indulgence. The trustees of the church (as shown by the testimony) knew that bricks were being removed from their lot by the city carts, and if they had regarded it worth the trouble, they might have secured from the mayor or superintendent of the street hands an agreed statement of the number and value of the brick used, and had the account approved by the city council.

The city charter of 1839 shows no authority in the mayor of

the city without the sanction of the board of council, to make the city liable, by the removal and use of the brick; no such sanction of an affirmative character is asserted, and the evidence indicates that there was none.

We understand the rule to be well settled, that a municipal corporation can be held liable upon an implied contract in any proper case. Two facts, however, are essential to liability in such cases.

1. That the property, the value of which is sought to be recovered, was used by the city.

2. That such use was made, with the assent or under the authority of the corporate body having control in the matter.

We insist that there is no evidence showing that the brick sued for was used for city purposes, or if so used, that the city council authorized or sustained it. Argenti v. San Francisco, 16 Cal., 255; Crawshaw v. City of Roxbury, 7 Gray, 374.

*Upton M. Young* on the same side:

It is quite well settled that the officers of a municipal corporation cannot bind it beyond the scope of its powers, or in any way not authorized by the terms of the charter. Persons dealing with corporations are bound to know the extent of the powers conferred by the law creating them, and the moment a municipal corporation is, by the legislature, created, that instant those intending to make a contract with it are put upon inquiry. Were this not the case, the early destruction of all city governments would be the result. Leavenworth v. Rankin, 2 Kan., 358. If this court were sitting as a jury, could it render a verdict, and upon what theory? How many bricks went to the gutters? How do we conclude that 60,000 bricks were purchased by Crunp, who had no authority to purchase one; but he had well known power to remove obstructions to the public streets, because all charters expressly give that power to municipal corporations. The rule of law seems to be, in cases like the one at bar, that evidence of the *assent* of a corporation must be given, although such evidence is

not required to be great. Where the contract appears to be fair on its face, free from all fraud, and clearly shown to be useful, this assent must be that of the body corporate, and not that of a single member. A corporation can make no contract which is not expressly authorized by its charter, or necessarily incident to the purposes of its creation. Angell & Ames on Corporations, p. 200; Bacon et al. v. Miss. Ins. Co., 2 George, 116; 2 Kent's Com., 298; 7 How., Miss., 530. The authorities cited contemplate contracts, as such and not those attempted to be made, by individuals, who happen to be members of corporate organizations. A corporation when sued, even on a contract made by it, may deny its power to make such a contract. 12 U. S. Digest, 132, §§ 26, 28. The authority of even a board of trustees is subject to a strict construction. 2 Cowen, 419; Story on Agency, § 68. Applying the principles stated to the facts of this case, we perceive no error in the action of the court below. The action of Crunp, mayor, was never ratified by the corporate authorities of Vicksburg.

PEYTON, C. J., delivered the opinion of the court:

The plaintiffs in error sued the defendants in the circuit court of Warren county, in an action of assumpsit to recover the value of 60,000 bricks alleged to have been sold and delivered by the plaintiffs to the defendants.

To this action the defendants appear and plead the general issue, non assumpsit. And upon issue taken upon this plea, the court found for the defendants. Whereupon the plaintiffs moved the court for a new trial on the following grounds:

1. Because the finding is contrary to law and evidence.

2. Because the court erred in not permitting evidence to be given of the statements made by M. Murphy, the overseer of the street work, which motion was overruled by the court, and new trial refused, and to this action of the court the plaintiffs excepted, and bring the case into this court by writ of error.

It was an ancient and technical rule of the common law, that a

corporation could not manifest its intentions by any personal act or oral discourse, and that it spoke and acted only by its common seal. This rule has since been relaxed, and corporations can now be bound by contracts made by their agents, though not under seal, and also on implied contracts to be deduced by inference from corporate acts, without either a vote or deed or in writing. This doctrine is generally established in this country with great clearness and solidity of argument; and the technical rule of the common law may be considered as being in a very great degree done away in the jurisprudence of the United States. 2 Kent, 348, top page. The English law is more strict on this subject. The general rule is still understood to be, that a corporation, though created by statute, cannot express its will except by writing, under the corporate seal. To this general rule there are certain excepted cases as follows: 1. Where the acts done are of daily necessity, or too insignificant for the trouble of a seal. 2. Where the corporation has a head, as a mayor, who may give commands. 3. Where the acts to be done must be done immediately, and cannot wait for the formalities of a seal, and 4. Where it is essential to a moneyed institution that they should have the power to issue notes and accept bills. East London Waterworks v. Bailey, 4 Bing., 283.

The doctrine of implied municipal liability applies to all cases where money or other property of a party is received under such circumstances that the general law, independent of express contract, imposes the obligation upon the city to do justice with respect to the same. If the city obtain money of another by mistake or without authority of law, it is her duty to refund it, not from any contract entered into by her on the subject, but from the general obligation to do justice, which binds all persons, whether natural or artificial. If the city obtain other property which does not belong to her, it is her duty to restore it, or if used by her, to render an equivalent to the true owner, from the like general obligation, the law, which always intends justice,

implies a promise.    As a general rule, undoubtedly, a city corporation is only liable upon express contracts authorized by ordinance or other due corporate proceedings.    The exceptions relate to liabilities from the use of money or other property which does not belong to her, or to liabilites springing from the neglect of duties imposed by the charter, from which injuries to parties are produced.    Argenti v. San Francisco, 16 Cal., 255 ; 1 Dillon on Municipal Corporations, 476, sec. 384.

In Seagraves v. Alton, 13 Ill., 371, the court held that a contract was implied on the part of a city, which was bound to support its paupers, and which had refused to pay a person who had furnished a pauper with necessaries.    Here it will be noticed that there was an express refusal on the part of the city to suport the pauper, and yet a promise was *implied.*    This implication is a pure fiction to support what the court regarded as a just claim.

It may be observed, that when it is sought to render a municipal corporation liable for the act of servants or agents, a cardinal inquiry is, whether they are the servants or agents of the corporation.    If the corporation appoints or elects them, and can control them in the discharge of their duties, can continue or remove them, can hold them responsible for the manner in which they discharge their trust; and if those duties relate to the exercise of *corporate* powers, and are for the peculiar benefit of the corporation in its local or special interest, they may justly be regarded as its agents or servants, and *the maxim of respondeat superior applies.*    2 Dillon, sec. 772.

It appears from the statement of E. G. Cook, which was read in evidence, that the mayor and aldermen decided to use the bricks of the burnt church for the city work, and would return the same number when called for, or pay the market value at that time.    The evidence establishes the fact, that some of the bricks were used for making culverts and for other city purposes by the direction of the mayor of the city, and under the superintendence of Murphy, who was the city overseer of the streets.

These were agents of the corporation, whose statements, under the circumstances, should have been received in evidence. The court erred, therefore, in rejecting them.

Upon the whole, we think the plaintiffs were entitled to recover from the defendants the market value of the bricks used for city purposes at the time they were taken and appropriated.

The judgment will be reversed and the cause remanded for a new trial.