Mrs. T. A. Steitenroth et al. *v*. City of Jackson.

[54 South. 955.]

1. Municipal Corporations. *Supplying water outside of corporate limits. Powers. Code* 1906, *municipal chapter.*

Municipalities have no powers, except such as are delegated to them by the state, either expressly or by necessary implication; and there is no distinction in this respect between governmental powers and those of a private or business nature.

2. Supplying Water to Persons Outside Corporate Limits.

Under the municipal chapter, Code 1906, municipalities have no power to supply water to persons living outside of the municipality and it cannot be said that such power results by necessary implication from the power given the municipality to supply its own citizens with water.

Appeal from the chancery court of Hinds county.
Hon. G. G. Lyell, Chancellor.

Suit for damages by Mrs. T. A. Steitenroth et al. against the city of Jackson in the circuit court which was removed to chancery court by injunction. From a decree perpetually enjoining the suit, complainant appeals.

The facts are: Some years before the institution of this suit the waterworks system operated in the city of Jackson was owned by a private corporation, and during the time it was so owned certain parties ran a private pipe line a half mile or more beyond the city limits in order to secure water facilities. Later other parties tapped this private line in order to secure water. There after the city bought out the waterworks plant and operated it. There was one tap line, which served several parties, some of whom refused to pay their water rent. The manager of the city waterworks asked permission to come upon their premises and cut their water off at the hydrant, because of nonpayment of rent; but permission

was refused. Thereupon the city informed all the owners along the tap line that after the end of the quarter, if all arrears had not been adjusted the entire tap line would be cut off from service. Nothing was done toward adjusting the water rents, and at the date stated the entire tap line was cut off. Appellants, who had paid all their water rents prior to the beginning of the new quarter, were deprived of their water by reason of having the entire line cut out. After about two or three weeks the delinquents gave the city permission to come in and cut the water off at their hydrants. This was done, and water service continued to appellant and all others who had paid their dues. Appellants brought suit for damages in the circuit court. The case was removed to the chancery court by injunction, and the decree enjoining the suit was made perpetual. The contention of the city is that it was under no obligation to supply water to nonresidents, and, if it did contract with them to do so, it had a right to terminate the contract at the end of any rental period.

*Watkins & Watkins,* for appellant.

The city of Jackson had the implied right to furnish water to the persons in the suburbs of the city, though outside of its corporate limits.

Section 3339 of the Code of 1906 gave appellee, the city of Jackson, the right to erect, purchase, maintain and operate waterworks, and to regulate the same. It will be noted that this is the express grant of power under which the city acted in acquiring the water plant of the light, heat and water company. It will further be noted that the powers of a municipality are of two kinds; those which are expressed and those which arise by implication, or natural inference. It is our position in this case that the city of Jackson having the express statutory right to acquire a waterworks system for the purpose of supplying water to its inhabitants, and it having exer-

cised this express grant by purchasing the waterworks system referred to, that in view of the fact that the waterworks system which it acquired was supplying through pipes already laid, either at the expense of private persons, or at the expense of the company persons living just outside of the corporate limit, that by natural inference and by necessary implication the municipality had the right to continue this service, and with a view of presenting this principle to the court, we will direct your attention to the authorities sustaining our view.

It will be noted in this connection that the power of the city to furnish water to its inhabitants is not a governmental power, that it is not exercising a power of sovereignty. It is most generally stated that in the exercise of matters of sovereignty or in the exercise of its governmental functions, such as the levying of taxes, the enforcement of its criminal ordinances, the exercise of its police power and similar governmental functions that a municipality has no extra territorial functions; but, we respectfully submit that there may arise, and often does arise, cases in which a municipality exercising not governmental, but purely a business function, is not limited by corporate limits. A municipality has other functions than that of a sovereignty. It exercises governmental functions, and, again, it has the right to exercise and carry on business, and in carrying on and operating its business functions it is subject to the same rules and regulations as a private individual or corporation would be, and is not confined within the boundaries of municipal limits.

This principle is illustrated in a decision of this court in the case of *Lester* v. *Jackson,* reported in 69 Miss., p. 887. The city of Jackson had no right by express grant to own a park for municipal purposes, either within the said limits or without. Mrs. Ellen Moore, the widow of Gov. Poindexter, devised to the city to be used for a public park certain property, then outside of the city

limits, and the question arose as to the right of the city to accept the devise, and the court held that by necessary implication the municipality had the right to accept the gift, upholding at the same time the distinction between the exercise by a municipality of its governmental powers and the powers which it exercises in common with other corporations. The court uses the following language: "It is true the city may not have the same power of police over the park without its limits that it would over one within them, but the laws of the state would be in full operation there, and the right of the town, as owner, would be protected by them as are the property rights of natural persons. The fallacy in the argument of counsel for appellant seems to us to rest in the assumption that a town may not own property, however necessary or convenient to its corporate purposes, unless it may exercise rights of sovereignty over it. All acts of municipality, by which parts of the sovereign power of the state delegated to it are exercised, must, of course, be performed within the territory over which the power is delegated; but a right to own property is not a sovereign right. One state may own land in another, but it can exercise no governmental control over it; for, as to such land, it stands in the position of a private person. So a city owning a park without its limits could exercise over it only those rights and powers which spring from ownership."

It will only be necessary in this case to observe the distinction between the sovereign power of a municipality and its pure business functions, and it will be found that those cases, for the most part, which limit a municipality to its own boundaries, refer primarily to the exercise of the power of sovereignty delegated to it by the state. This principle is well illustrated in the case of *Schneider* v. *City,* 99 Am. St. Rep. 996. The municipality had the express power under its charter to work and keep in repair its streets in order that the same should be safe

and convenient for passage. It sought to buy a stone quarry some seven miles from the city limits for the purpose of quarrying rock and stone for transportation to the city to be used in the repair of its streets. The exercise of this power on behalf of the city was contested, and it was said, just as is contended in this case, that a city cannot contract beyond its corporate limits; about which the court has the following to say:

"It would not be profitable to examine at length the numerous cases called to our attention. It seems sufficient to say that, in the main, they hold that municipal authority in a governmental sense cannot be exercised outside the limits of a municipality. That is in harmony with the decision of this court. It is also in harmony with the view that municipal ownership may reach beyond the corporate limits as held in the cases to which we are referred. When one draws the distinction between mere right to own property for city purposes and the right to exercise sovereign authority over property, the authorities upon which this case was grounded are easily seen not to warrant the result sought. In testing the question of whether a municipality has exceeded its corporate authority in going outside its boundaries in any given case, we must first determine the purpose in view. If that be found to be the exercise of police authority, or authority to govern in any sense, the conclusion must be that the end does not justify the act. If it be found to be mere exercise of a business function, the conclusion must be that the mere act of going beyond the boundary does not necessarily involve excess of power. In determining whether corporate authority has been exceeded by reason of distance from the city limits, we must solve that by an appeal to reason and common sense, keeping in mind that municipal corporations in their business matters are governed by very much the same rules as private corporations."

Again, in the case of the *City of Coldwater* v. *Tucker,*
24 Am. Rep. 601, the question arose as to whether a
municipality had implied authority to make contracts
beyond the city limits for the construction of its sewer-
age system. The court held that unless explicitly pro-
hibited from so doing that by natural inference it had
the power, using the following language:

"By this contract the city undertook to do certain
work outside of its own limits, where its power to secure
the results bargained for depended on its power to make
a private contract with outside land owners and not upon
any statutory or chartered authority. The ditch itself
was laid out under the supervision of the drain commis-
sioners. If the contract was valid the city acted, so far
as this work was concerned, in the same right as a pri-
vate person contracting to do work on the land of an-
other." The court held in that case that the municipality
had the implied authority to go beyond the city limits
in order to effect a proper drainage system. *Savings
Bank* v. *Arkansas City,* 22 C. C. A.

It is held in the case of *Land* v. *Improvement Com-
pany* v. *City of Billings,* 50 C. C. A. 70, that a city has
authority by implication in erecting a sewerage system
to extend the same beyond the city limits. The same is
held in the case of *Langley* v. *Augusta,* 118 Ga. 590.
The same rule is announced in the case of *Wilson* v.
*Boise City,* 6 Idaho 391.

It is held in the case of *East Syracuse,* 20 Abbott
(N. C.), 131, that by necessary implication a munici-
pality had the authority to work and keep in repair a
highway leading beyond its limits to a gravel bed owned
by the city. Cyc. 28, p. 262.

We refer the court to the following cases: *Mauldin* v.
*Greenville,* 8 L. R. A. 291; *Heilbon* v. *Cuthbert,* 96 Ga.
312; *Ellenwood* v. *Reidsburg,* 91 Wis. 131, and in most of
these cases it is held that a municipality, without ex-
press grant of power, not only has the right to furnish

lights for its streets and public places, but that without express authority and by inference, it has the right to furnish lights to its inhabitants. We refer especially to the case of *Crawfordville* v. *Braden,* 14 L. R. A. 272.

It is also held in the case of *Twitchell* v. *Spokane,* 24 L. R. A. (N. S.) 290, that a municipality having the right to furnish water to its inhabitants, has by implication the right to furnish the same free to charitable institutions.

The question is as to whether or not the power sought to be exercised is reasonable, proper and necessary. Would it be reasonably proper for a private corporation to do so? For a case directly in point, we refer the court to the *City of Henderson* v. *Young,* 83 S. W. 583, where the right of the city to furnish electric lights to the inhabitants of the suburbs of the city was contested. The supreme court of Kentucky in delivering the opinion used the following language:

"A city has two classes of powers, one legislative and one governmental, in the exercise of which it is a sovereignty and governs its people; and in the exercise of this class of powers the statute must be strictly construed. The other class of powers is conferred upon it for the purpose, not of government, but for private advantage to the city and its inhabitants. In these powers it is governed by the same rules that govern individuals or corporations. See Dillon's Municipal Corporation, 3d Ed., par. 36. In the management and operation of its electric plant a city is not exercising its governmental or legislative powers, but its business powers and may conduct the same in the manner which promises the greatest benefit to the city and its inhabitants in the judgment of the city council; and it is not within the province of the court to interfere with the reasonable discretion of the council in such matters."

The court will see that the rule requiring a strict construction of the grant of power of a municipality refers

only to the exercise of its sovereign powers and that an entirely different principle of construction is adopted in passing upon the exercise of its purely commercial functions.

*Powell & Thompson,* for appellee.

It is first contended on the part of the city that the city did not have power under its charter to make contracts to supply water to parties living beyond the city limits and secondly that if they had such power they were under no obligations to continue to supply water and had the right to terminate the understanding at the end of each quarter for which the parties had contracted with or without excuse, and thirdly that in order to protect itself, the city was bound as its only remedy to do what it did in the premises.

First. Then what were the powers of the city in the premises? The city of Jackson is under the municipal chapter of the Code of 1906 and referring to section 3314 of this Code, we find that the city has power to purchase and hold real estate and personal property; to purchase and hold real estate, within the corporate limits, for all proper municipal purposes, and for parks, cemeteries, hospitals, schoolhouses, houses of correction, waterworks, electric lights, and sewers. And without the corporate limits may be owned under purchase, grant, or devise, heretofore or hereafter made, to be used for such purposes, and for pest-houses.

Under section 3339 of the same Code the city is given the further power to erect, purchase, maintain, and operate waterworks, and to regulate the same; and to prescribe the rates at which water shall be supplied to the inhabitants; and to acquire by purchase, donation, or condemnation, in the name of the municipality suitable grounds, within or without the corporate limits, upon which to erect waterworks, and also the right of way to and from such works, and also the right of way for lay-

ing water pipes within the corporate limits, and from which waterworks to the municipality, and to extend such right from time to time; or to contract with any person for the erection and maintenance of waterworks for a term not exceeding twenty-five years, fixing water rates in the contract subject to municipal regulations. But a contract for the erection, purchase, or maintenance of waterworks shall not be entered into until submitted to a vote of the qualified electors, and approved by a majority of them.

These two sections embrace all of the powers that the city of Jackson had to make this contract and show that the present contract on the part of the city was *ultra vires.*

In the American and English Encyclopedia of Law, vol. 15, on page 1100, under the head of *Ultra Vires* Contracts we find the following: "The duties and powers of the officers and agents of a municipal corporation are prescribed by statute that every person dealing with them may know, and so charge with knowledge of the nature of these duties and extent of these laws."

It follows therefore that the agents, officers, and even the city council of a municipal corporation cannot bind it by an act which transcends their lawful or legitimate powers, and a municipal corporation may set up a plea of *ultra vires,* or its own want of power under its charter or constituent statute to enter into a given contract.

And find in volume 1 of Municipal Corporations by Abbott on page 555 the following: "A public corporation, it must be remembered, is first an artificial person and second an artificial person of such character that, as compared with others, its powers are still restricted and limited, and further the tendency of the courts is to confine the exercise of corporate powers strictly to such as are clearly given, and following this rule the power to contract, of a particular public corporation of whatever class, will be determined, not by the application of gen-

eral rules or principles of law, but by the specific right given to such corporation in some grant of legal authority. Public corporations have only such rights and powers as are specially granted them or absolutely necessary to carry into effect the rights and powers so granted.''

It certainly cannot contend in this case that the extention of the water main beyond the city limits was necessary to carry on the system, certainly there is no proof at least to this fact.

In Abbott on Municipal Corporations in vol. 1, p. 577, the author says, ''An unauthorized or illegal contract executed by a public corporation is incapable of enforcement. It is absolutely void and neither the doctrine of estoppel nor ratification can be invoked to maintain it.''

This court in the case of Edwards House and Railroad Company against the city of Jackson, 51 So. Rep. 802, has announced the same doctrine.

If the city has the right to supply water consumers a mile beyond the city limits then it would have an equal right to supply water ten, twenty, or one hundred miles beyond the city limits, or in fact all over the entire state.

The powers granted to the city by name in the municipal Chapter as before stated are a limitation upon the powers of the city on the principle of *expressio unius exclusio alterius.*

SMITH, J., delivered the opinion of the court.

It is elementary law that municipalities have no powers, except such as are delegated to them by the state, either expressly or by necessary implication; and there is no distinction in this respect between governmental powers and those of a private or business nature. The powers of a municipality are granted to it, and must be exercised solely, for the benefit of the inhabitants thereof.

While, under the chapter on Municipalities in the Code, power is granted to do whatever is necessary in order

to supply the inhabitants of a municipality with water, nowhere in this chapter is power granted to supply persons living outside of the municipality with water, and it cannot be said that such a power results by necessary implication from the power given the municipality to supply its own citizens with water.

All of the cases cited by counsel for appellants in support of their contention are cases wherein the acts done by the municipalities and upheld by the courts were for the benefit of the inhabitants of the municipalities.

*Affirmed.*