## R. T. BERRY *v.* TOWN OF MENDENHALL.

[61 South. 163.]

EMINENT DOMAIN. *Streets. Vacation. Reservation. Validity. Code* 1906, *section* 3336.

While under Code 1906, section 3336, the boards of mayor and aldermen of towns are given the power to close and vacate streets; they cannot close streets and reserve the right to reopen them without compensation to abutting property owners.

APPEAL from chancery court of Simpson county.

HON. R. E. SHEEHY, Chancellor.

Bill by R. T. Berry against the town of Mendenhall. From a decree dismissing the bill, the plaintiff appeals. The facts are fully stated in the opinion of the court.

*C. M. Whitworth,* for appellant.

The board in closing Bay and Magnolia streets acted on a petition signed by all the abutting property owners, that owned property on those streets. This fact is copied in the order entered on the minutes, which recites, towit: "Same showing that all property holders had signed petition as required by section 3336, Mississippi Code 1906, was granted." This petition prays for the vacating and closing of these streets under this section, the only section that gives the board power to act in closing streets, and acting under this section on a petition signed by all the abutting property owners the streets were closed. The transaction is finished and completed. It is said, however, that the last clause of the petition, towit: "Same to remain closed until public interest might demand reopening," invalidates the order. This, I contend, is mere verbiage, and does not rise to the dignity of a condition, but if it should be held as such, it is certainly not of that character as to invalidate the order; if it is not and only irregular, then it cannot be rescinded at a subsequent term. The records show jurisdiction of the board over the streets and the abutting property owners, when the petition was presented, and at the time of closing the streets, and there is no prejudicial error disclosed in the proceedings. That being true a presumption of law arises and sustains the judgment or order. See 37 Cyc. 188, 189, also footnote 61, copied, *"Coakley* v. *Boston, etc., R. Co.,* 159 Mass. 32, 33 N. E. 930; *Cheshire Turnpike* v. *Stevens,* 10 N. H. 133, holding that a town cannot discontinue a highway during pleasure, with a reservation of a right to open it at any time, without paying damages. The reser-

vation in such case will be void, and the discontinuance absolute.''

The law has been substantially complied with in closing these streets. ''Where the law appears to have been properly complied with, immaterial defects in the order will not invalidate it.'' ''An order discontinuing a road, however irregular, cannot be rescinded for that cause at a subsequent term.'' See 37 Cyc. (vii), 187, 188. 37 Cyc. ''B'', p. 189, ''As a rule it is held that an order or judgment discontinuing a public road must be deemed conclusive so long as it remains in force, and the correctness of a proceeding cannot be attacked collaterally, unless it is void.'' See 35 So. 111, *Keenan* v. *Harkins,* et al.

It is conceded and undisputed that the condition and the same state of facts existed, so far as the public interest is concerned, at the time these streets were ordered closed, as existed at the time these streets were ordered reopened. This being true, the board was estopped from considering the second petition for the reopening of these streets. See 16 Cyc. 685, Judgments. ''Two sorts of estoppel arise from the record of a judgment—first from the record considered as memorial or entry of the judgment, and second, from the record considered as a judgment. As a memorial of the fact the rendition of the judgment record imports absolute verity and may be impeached by no one, whether or not a party to the proceeding in which it was made. As a judgment on the other hand the record has the further effect of precluding a reexamination into the truth of the matter decided; but in this aspect it is as a rule binding only upon the parties to the proceeding and their privies. This further and secondary effect of the record considered as a judgment is otherwise known as estoppel by judgment, the matters adjudicated being termed *res judicata.*''

The power of municipalities to close streets is statutory, and when this power is exercised, in the absence of fraud, it is conclusive, and cannot be reviewed. See 37

Cyc. 202, 27 Am. & Eng. Ency. of Law (2 Ed.), p. 113, 114, also *Blocker* v. *State,* 72 Miss. 720, 18 So. 388, 27 Am. & Eng. Ency. of Law (2 Ed.), p. 117, quoting the language, "After the power to vacate a street has been duly exercised, the municipality cannot by repeal of the vacating ordinance amend its action in vacating the street."

See *Garnley* v. *Day,* 114 Ill. 185, McQuillin's Municipal Ordinance, p. 426. Under the fifth assignment of error the motion to suppress the depositions of the mayor and board of aldermen ought to have been sustained, for they were estopped from considering the second petition and from reopening the streets.

The question of closing these streets was heard at the March term, 1909, of the board when the facts were presented and a final adjudication was had closing them, so it is not in the power of the board to aid Elliot in forcing Berry to sell a certain plat of land or on his refusal to do so to suffer great damages by the opening of these streets. See 28 Cyc. 840 (b-846) in point. 16 Cyc. 786 says: "A party who has, with knowledge of the facts, assumed a particular position in judicial proceedings is estopped to assume a position inconsistent therewith to the prejudice of the adverse party." On page 798, it says: "Applying the rule against taking inconsistent positions, parties to stipulations and agreements entered into in the course of judicial proceedings are estopped to take positions inconsistent therewith to the prejudice, injury or disadvantage of the party or the person setting up the estoppel." On page 799, 16 Cyc., it says: "A claim made or position taken in a former action or judicial proceeding will estop the party to make an inconsistent claim or to take a conflicting position in a subsequent action or judicial proceeding to the prejudice of the adverse party, where the parties are the same, and the same questions are involved." In this litigation, the parties, the questions and the conditions are identical. It will be noted that several months passed before any action was taken

by Elliott to have these streets opened. In the meantime
Berry had erected his barn garden and orchard on these
streets and no objection was made thereto, either by El-
liott, the mayor, the board or the marshal, although they
were present on several occasions while these improve-
ments were being made, as is shown from the evidence,
none of whom ever questioned his right or interposed
any objections whatever. See 16 Cyc. 768; *Wither-
spoon* v. *City of Meridian,* 69 Miss.——, 6 So. 244.

When these streets were closed there were two parties
acting, to wit, all the abutting property owners on one
part and the town of Mendenhall by its municipality on
the other; so the order closing them was a finality—a *res
judicata*—of the question. This being true, the opening
of the streets could only be had under "Eminent Domain
Proceedings," as directed under section 3337 of the Code
of 1906. It, therefore, follows the action of the board in
declaring the reopening of the streets was void, since
there is no power or law conferring authority on boards
of aldermen to open streets after having closed them per-
manently. See *Illinois Central R. R. Co.* v. *State,* 94 Miss.
759.

In the case of *Witherspoon* v. *City of Meridian,* Judge
*Campbell* said, "We are not willing to declare against
the doctrine of equitable estoppel to protect individuals
against municipalities, under some circumstances. There
may be cases where we would not hesitate to use the bene-
ficient doctrine of estoppel *in pais* against the municipal-
ity. We can imagine such a case."

We submit this case under consideration evidently
meets in all respects the imaginary case of this learned
jurist.

*A. M. Edwards* and *D. C. Enochs,* for appellee.

Since this court has said that municipal authorities un-
der the Code chapter on municipalities have the same jur-
isdiction over the streets as boards of supervisors have

over county roads, the case of *Hatch* v. *Monroe County,* 56 Miss. 26, is in point as assisting the court in the construction of this order and the effect to give it. The board of supervisors of Monroe county passed an order as follows:

"Ordered that the Black Swamp road from Aberdeen to Dr. Ward's ginhouse, be discontinued as a public road, and that the overseer, J. B. Genber, be relieved from duty on said road; also ordered that said road be kept open as a private right of way."

This road traversed a part of Lucy Hatch's land, and she fenced it up, enclosed it in her fields, and cultivated it. Some two years later the said board of supervisors repealed the order discontinuing the road, and appointed hands and an overseer to work the same, which they proceeded to do. Lucy Hatch sought and obtained an injunction against the said board of supervisors and overseer. Lucy Hatch's contention was, that the board had the authority to discontinue the road, did discontinue it, and that that part running through her land reverted to her.

In the case at bar appellant contends with reference to the order of the municipal authorities of Mendenhall just what Lucy Hatch contended with reference to the order of the board of supervisors of Monroe county, that the proviso to the order means nothing, and the closure a permanent one.

We quote from the Hatch case as follows: "The board of supervisors had the right to discontinue the public road; but the proper construction of the order of the board is, that it did not purpose to surrender the right of the public to the road designated, but merely to discharge the overseer and hands from that district. It is certain that the board did not consent that the road should be closed, for the order in express terms directs that it shall "be kept open as a private right of way." It is difficult to tell what was the precise meaning of "keeping

the road 'open as a private right of way,' but it is manifest that the road was to be 'kept open,' and, until an unequivocal surrender by the board of supervisors of the right of the public to the road, the owner of the fee had no right to close it.''

We submit, therefore, that the proviso on the order of the authorities of Mendenhall, discontinued the streets until the public interest required them to be reopened, is not void, but shows that the municipal authorities did not intend to surrender the rights of the public therein.

Appellant seems to contend that any street, with the consent of the abutting landowners, can be closed by the municipal authorities. In other words, that Capitol street in the city of Jackson, from the Union Depot to State street, with the consent of the abutting property owners, can be closed by the municipal authorities of the city of Jackson, regardless of any public necessity or requirement for same. We submit that the interests of more persons are to be considered in closing a street than those of abutters.

This power vested in the municipal authorities to close and vacate streets, is one to be exercised by them as other powers—for the public good. And as to when municipal authorities may close a street, and who are interested in a street, we quote the following from the opinion in the case of *City of Laurel* v. *Rowell*, 84 Miss. 435: ''All the citizens of a town have the right to have their public thoroughfare, streets, or alleys, whether acquired by dedication or user, kept open for their own use and the use of visiting strangers who come for commerce or social intercourse. They should never be closed except when plainly for the public good.''

And as a stronger case in point, more tersely stated, we quote the following from the opinion of this court in the case of *Poythress* v. *M. & O. R. R. Co.*, 92 Miss. 638: ''We are unwilling to hold that a municipality cannot close a street, when in its judgment it is for the public good. In such case the individual right of the citizen must

yield.  The ordinance providing for the closing of this street was passed, as the ordinance declares, because the municipal authorities believed that the safety of the public demanded it.  Under these conditions it was in the power of the municipality to order the streets closed.''

The quotation made by us from the case of the *City of Laurel* v. *Rowell, ubi supra,* voiced again in the Poythress case, is quoted in the case of *A. & V. R. R. Co.* v. *Turner,* 95 Miss. 594 and approved.

Appellant, not content to rest his case upon the right of the board to open said streets except by eminent domain proceedings, proceeds in his brief to urge that the board was estopped to do so.  But how can appellant claim he was in any way misled by the board when his own testimony shows that he knew why they closed the streets, which was not for the public good and unlawful. He alleges in his bill that he, acting on the order closing the streets, and with the knowledge and consent of the mayor of aldermen, and believing further that he was the owner of the land embraced in said streets, enclosed the same with fences, and erected a barn thereon, and has thereon a growing garden and orchard.  Surely he cannot assert that the town is estopped to reopen these streets, when he does not allege that he would not have acted as he did but for the order; nor that he would not have so acted without the order.  We conclude from his pleading and his contention that he would have acted as he did, by virtue of his deed, which he contends conveyed him the land embraced in these streets.

And besides, a municipality cannot be bound or estopped by its officers acting beyond the scope of their authority as fixed by law.  And even if a municipality could be so bound or estopped, appellant has not been misled, for he was a party to the void order closing the streets, and was familiar with the reason for closing the streets.  He knew the law, that the streets could not be closed except for the public good, and that the town would not be

bound or estopped by an order he might secure from the board purporting to close the streets for any other reason. Under no phase of the case can appellant claim that the town is estopped to vacate its void order. Had the order recited that the streets were closed for the public good, and appellant, having had nothing to do with the proceedings to close, and not knowing the facts by which the order was passed, had acted thereon to his damage, the question of estoppel might be in the case. Appellant's authorities cited have no application to the facts of this case. He seems to think the order is a judgment at law, claiming the town is one party, and abutting landowners the other, and calls the order a *res adjudicata* of all matters connected with the closing of these streets.

Argued orally by *C. M. Whitworth* for appellant.

Cook, J., delivered the opinion of the court.

The town of Mendenhall, by an order entered upon the minutes of the town board, vacated and closed certain streets of the town, "same to remain closed until the public interest might demand reopening." Subsequent to this order one of the original petitioners for the closing of the streets circulated a petition to the board of mayor and aldermen, asking that its former order be rescinded. The board granted this petition also, and passed an order rescinding its former action in closing the streets, and ordered the marshal to proceed to reopen the closed streets. Appellant, an owner of lots abutting upon the closed streets, in the meantime had inclosed the streets with a fence, erected buildings, and made other improvements thereon. When the marshal undertook to enforce the orders of the board, appellant filed his bill in the chancery court praying for a writ of injunction restraining the town from attempting to reopen the streets. A temporary injunction was granted, but upon final hearing the injunction was dissolved and the bill dismissed.

Numerous questions are raised by the briefs on both sides, but all of them will be passed over without discussion, save the one which we think is the determinate point in the litigation.

By section 3336 of the Code of 1906 boards of mayor and aldermen of towns are given the power to close and vacate streets, and it was by the authority of this section that the streets were closed. There is no doubt about the power of the boards of towns to reopen closed streets, but can they do so, except by eminent domain proceedings? The attempt here was to reopen the streets by rescinding the order closing them, and it is contended for the town that this right was expressly reserved in its former order. It will be observed that the statute authorizing town authorities to close and vacate streets does not give such boards authority to close streets conditionally. The weight of authority is upon the side that towns, without express authority in the statute, cannot close streets and reserve the right to reopen them without compensation to abutting property owners. *Cheshire Turnpike* v. *Stevens,* 10 N. H. 133; *Hammer* v. *Elizabeth,* 67 N. J. Law, 129, 50 Atl. 451. The rule as announced by these authorities appears to us to be the wise rule. If boards of aldermen were permitted to close and reopen streets at their will and pleasure, the status of affairs would be uncertain, and the ownership of the fee in the soil embraced within the closed streets would remain forever in abeyance, and we think this would be intolerable.

*Reversed and remanded.*