EDWARDS HOUSE CO. v. CITY OF JACKSON.*

En Banc.    March 30, 1925.)

[103 So. 428.    No. 24395.]

MUNICIPAL CORPORATIONS.    *Void contract for acquisition of land for street held not to create implied contract to pay for use.*

Where contract of city to purchase land for a street was void under statute (Laws 1920, chapter 326, Section 1, amending Laws 1918, chapter 209, Section 3), as to incurring indebtedness, and alternative provision to annually pay a certain amount for its use was void because no statute authorized the city to lease property for a street, the city is not liable on an implied contract for reasonable value of the use and damages to the land from such use.

ANDERSON, J., dissenting.

*Headnote 1. Municipal Corporations, 28 Cyc., p. 670.

APPEAL from circuit court of Hinds county.

HON. W. H. POTTER, Judge.

Action by the Edwards House Company against the city of Jackson. From judgment for defendant, plaintiff appeals. Affirmed.

*Green, Green & Potter,* for appellant.

This is an appeal from the circuit court of Hinds county wherein a demurrer was sustained to the declaration. Plaintiff owned a certain tract of land particularly described in the declaration, and upon April 7, plaintiff and the city of Jackson made a contract whereunder the said city sought to acquire the land which contract was

adjudged void by reason of want of power in the city to make it. See 96 So. 170.

Plaintiff being the owner, and in possession, the city of Jackson entered upon and took possession of said property upon the 7th day of April, 1920, and thereover laid its curbs and gutters and then and there dug up and removed from said street large quantities of earth, and deposited thereon gravel for the benefit of the public, and thereover the city did exercise, to the exclusion of plaintiff, full title claiming the said property under the contract and excluding the plaintiff from any use thereof as owner.

The reasonable value of the use and occupation enjoyed by the city wherefrom the said plaintiff was excluded was, three thousand dollars per year, which was the reasonable rental value of said street during said period, and that said city deprived the plaintiff thereof during said time, whereby it was injured in the sum of nine thousand dollars.

Under the charter of the city of Jackson, it had full jurisdiction as to streets—the same jurisdiction possessed by the board of supervisors over roads, ferries and bridges, so that integrated into the definition of the power of the city is the admeasurement made of the power of the board of supervisors. *Board* v. *Arrighi,* 54 Miss. 668; *Paxton* v. *Baum,* 59 Miss. 531.

Therefore, with this paramount power, the city entered, took possession of that which belonged to the plaintiff, and thereby deprived the plaintiff thereof, and in so entering advantaged itself thereby to the extent specified in the declaration. *Church* v. *Vicksburg,* 50 Miss. 604; *Sherman* v. *Grenada,* 51 Miss. 186; *Sheldon* v. *Kalamazoo,* 24 Mich. 383; *Scott* v. *Hart,* 91 So. 17.

These cases sharply present for consideration the question of liability when a municipality through its mayor and board of aldermen unlawfully take property belonging to another and utilize that property for the benefit of the municipality. Such utilization imposes a respon-

sibility upon the party to respond for the use thus made. Now the question of responsibility in this character of case is directly set forth by this court in *Watts* v. *Buchanan*, 92 Miss. 544; *Bank* v. *Bank*, 67 So. 96.

Furthermore, under the laws of Mississippi, an estoppel may be created against a municipality. *Jackson* v. *Merchants Bank*, 73 So. 574; *Surety Co.* v. *County*, 104 Miss. 633.

The city simply enjoyed this parcel of land for its own purpose during the time, with absolute right to appropriate if it saw fit. It is liable for the value of that which was so appropriated during the time of its appropriation. *Perkins* v. *State*, 94 So. 463.

*W. E. Morse* and *Walter A. Scott, Jr.,* for appellee.

I. PERSONS DEALING WITH A MUNICIPALITY MUST TAKE NOTICE. The contract entered into by appellant and the city of Jackson was made in good faith, both parties believing at the time that it was a valid and lawful contract under which the city of Jackson was to acquire the property of the appellant for street purposes. Both parties at the time believed the city had the power to acquire a street in accordance with the terms of the contract. The fact that this view of the law proved erroneous can confer no right on the appellant nor can it create a liability on the part of the appellee. The appellant was presumed by law to know the powers of the municipality with which it was dealing. *Edwards Hotel & Ry. Co.* v. *City of Jackson*, 96 Miss. 547, 51 So. 802.

The appellant was presumed to know that the city of Jackson had no power to contract except in pursuance to authority to it by the state of Mississippi, of which it is the creature. *Edwards House* v. *City of Jackson*, 99 Miss. 354; *Hazlehurst* v. *Mayes*, 96 Miss. 656; *Wise* v. *Yazoo City*, 51 So. 453; *A. & V. R. R.* v. *Turner*, 52 So. 261; *Steitenroth* v. *City of Jackson*, 54 So. 955. The powers of a municipality, if doubtful or ambiguous, are

to be resolved against the power. *Crittenden* v. *The Town of Booneville,* 92 Miss. 277.

II. Implied Contracts of a Municipality. In view of the fact that appellant is precluded from asserting any right under the void contract, he is now attempting to bring forward an implied contract on which to base his claim for rent and damages. It is our opinion that this cannot be done. The void contract necessarily stands as the basis for this litigation, for it was under the provisions of this contract that the city of Jackson entered the property and converted the same into a street. The court has already held this contract to be void because of lack of power in the city to execute it. If the city of Jackson has no power to execute a written contract entered into with all legal solemnity, it certainly has no power to make an implied contract. If appellant's view of the law is correct, then the city of Jackson can indirectly make a contract which it could not make directly, and this whether or not the contract was against public policy or against a positive, prohibitory statute.

Moreover, we respectfully submit that the supreme court has already ruled on this point in the appellant's motion to correct the judgment in the case of *Edwards House Company* v. *City of Jackson,* 96 So. 682. Under section 3, chapter 209, Laws of 1918, as well as under section 6053, Hemingway's Code (sec. 16, ch. 120, Laws of 1920), the city was without power on the face of this record to make a contract to pay the said three thousand dollars and consequently there can be no recovery for said amount under the said contract.

Appellant cites the case of *Church* v. *City of Vicksburg,* as authority. It will be noted, however, that in the Church case, the city had the power to purchase brick in the first instance. After purchasing the brick it was legally bound to pay. In the instant case the city of Jackson had no power to contract in the premises.

III. Estoppel by Ultra-Vires Contract. As a corollary to the rule that all persons dealing with a munici-

pality must take notice of its powers, is the rule that a municipality is not estopped by an *ultra-vires* contract made by its agents. The rule, with reasons therefor, is clearly stated in the case of *Edwards House Company* v. *The City of Jackson*, 91 So. 802; 19 R. C. L. 1961; Mc-Quillan on Municipal Corporations, sec. 1172 (3); Dillon on Municipal Corporation, sec. 795.

The chief exceptions to the rule that municipal corporations are not liable on *ultra vires* contracts, seems to be when money or property is held by the corporation after having received the same under a void contract. It is readily conceded that where money is obtained by a municipality it cannot hold same and plead *ultra vires*. If it does plead *ultra vires,* the consideration may be recovered on an implied *assumpsit*. The same rule holds in the case of property received under an *ultra vires* and therefore void contract. The city could not at the same time plead *ultra vires* and retain the property. In such a case the law by appropriate remedy would compel a re-conveyance.

In the instant case, however, the city of Jackson refused to issue a warrant when, the first payment was due and at present holds no consideration of the contract. The city of Jackson received the property under the provisions of a contract which was subsequently declared null and void by this court.

IV. Liability of Municipality for Benefits Received Under Contract Made in Violation of Statute. 19 R. C. L. 1064 says: "When the legislature expressly prohibits a municipal corporation from entering into a contract under certain conditions or without complying with certain preliminaries, there can be no recovery on a contract entered into in disregard of the legislative command. Nor can there be any recovery upon an implied contract to pay for the benefits received under such an agreement. When a contract is entered into in violation of a positive rule of law intended for the protection of the taxpayers, such as a requirement that con-

tracts of a certain character shall be given to the lowest
bidder, or that the incurrence of an obligation of a cer-
tain magnitude shall have the approval of the voters of
the municipality, there can be no recovery either upon
the contract itself, or upon a *quantum meruit.*"

V. NO LIABILITY FOR USE AND OCCUPATION BASED ON
RELATION OF LANDLORD AND TENANT. Section 2374, Hem-
ingway's Code. The above section clearly refers only
to a case in which the relation of landlord and tenant
exists. *Scales* v. *Anderson,* 26 Miss. 94. The contract
however, in the instant case clearly negatives the pre-
sumption of the relation of landlord and tenant. It is
true that a clause is inserted therein providing for rent
in case the contract is void. This however, does not es-
tablish the relation. The relation as established by that
instrument is clearly one of vendor and vendee.

VI. NO LIABILITY FOR USE AND OCCUPATION UNDER VOID
CONTRACT OF PURCHASE. While there are no direct cases
of this court holding that no liability exists for use and
occupation under a void contract to purchase, we cite
cases from various other states to this point. *Belger* v.
*Sanchez,* 70 Pac. 738; *Lynch* v. *Pearson,* 57 Pa. 677;
(*Delaware*) *Redeen* v. *Baker,* 4 Harr. 179; *Newby* v. *Ves-
tal,* 6 Ind. 412.

VII. ELECTION OF REMEDIES. The appellant attempt-
ed to force the city of Jackson to perform the contract
by a suit in the chancery court of Hinds county for spe-
cific performance. In this litigation, the appellant was
unsuccessful. We submit that on taking this step, on
electing this particular remedy, he estopped himself from
pursuing another and inconsistent remedy. *Arky* v.
*Floyd,* 61 So. 545; *Mattiner* v. *Fant,* 74 So. 822.

Argued orally by *Garner W. Green,* for appellant, and
*W. E. Morse,* for appellee.

McGowen, J., delivered the opinion of the court.

Declaration filed by the plaintiff suing the city of Jackson for a total of nine thousand, nine hundred and fifty dollars for the use and occupation of the lands in the city of Jackson, Miss., which we will designate as "Esau street," claiming that the city enjoyed the use and occupation of the street for the city's benefit, from April 9, 1920, to June 1, 1923, and alleging that by virtue of a contract which had been entered into between the hotel company and the city for three thousand dollars per year that was a reasonable rental value, making a total of nine thousand dollars for the fair rental value of the lands; and, further, for two hundred and fifty dollars because the city constructed curbs and gutters along the sides of said street, and claiming that two hundred and fifty dollars was fair damages for removing same therefrom; and three hundred dollars for removing a sidewalk; and one hundred dollars for releveling and reconditioning the ground. The contract of date April 7, 1920, is attached as "Exhibit A" to the declaration.

The defendant, the city, interposed a demurrer challenging the declaration on the ground that the city, having entered upon said lands by permission of the plaintiff under a void contract of purchase prohibited by law, was not bound as tenant, nor as a purchaser upon *quantum meruit,* nor could there be an implied promise to pay arising from a void contract the making of which was prohibited by law. The demurrer was sustained by the lower court, and the plaintiff declining further to amend its declaration, the case is here for final adjudication upon the demurrer.

The contract involved in this controversy was before this court in cause No. 23135, *Edwards House Co. and Enochs & Flowers, Ltd.,* v. *City of Jackson,* and is reported under said title in 132 Miss. 710, 96 So. 170, where the contract, which is voluminous, is set out in full in the opinion of the court. The contract was declared null and void by this court in that case because the contract

was in violation of the Laws of 1920, chapter 326, section 1, amending chapter 209 of the Laws of 1918, section 3, providing:

· " 'That no warrant shall be issued or indebtedness incurred by any . . . municipality unless there is sufficient money in the particular fund from which the allowance is or must be made to pay such warrant or indebtedness. Provided, however, that such indebtedness may be incurred upon petition of a majority of the qualified electors,' etc. A city cannot without such petition purchase property on a credit basis extending over a number of years, and a contract by the city to pay annually a sum equal to the entire tax on designated property for each year is *ultra vires* and void."

The above is the syllabus of the opinion in that case.

We shall call attention to some of the peculiar provisions of that contract, one of which was that the taxes upon the adjacent property of the Edwards Hotel Company were to be paid by the city for a full period of twenty years, apparently without regard to value of property or rate. In other words, the board of mayor and aldermen not only pledged the credit of the city, but mortgaged the taxes to be collected from the plaintiff here upon its adjacent property in payment of the purchase price of this property. The contract was peculiar, in that it provided for noiseless pavement, and not only bound the board which made the contract, but bound all future boards as to the payment of taxes and as to the building of pavements and as to the use of the street. However, the court contended itself, in the former report of this case, with declaring that the contract was null and void because the city had violated the mandate of the legislature with reference to creating an indebtedness in certain cases, not authorized by the electors in an election.

It is further important to note that within less than one year from the date of the contract the city, by its officials, repudiated the contract—declined to comply with

the conditions to the extent that on March 8, 1921, the hotel company filed its bill setting up the contract and the breach thereof, and praying that a decree for specific performance of the contract be made, and for injunctions requiring a compliance on the part of the city with the terms of the contract.

Section 3 of the contract is in the following language: "Should said deed be returned hereunder before delivery or become void after delivery, then the city shall have the right to use and occupy said parcel of land as a street, and shall, for the use and occupation of said parcel of land, pay unto the seller the sum of three thousand dollars ($3,000) per annum, for the collection whereof as rent the seller shall have all of the remedies vouchsafed by law, and the possession of and title to said property shall re-vest in the seller as of the date of the execution of these presents, and there remain as of said date, as fully and completely as though these presents had never been executed.

"Sec. 4. Said seller shall have the right forthwith to cause to be removed therefrom all property of every kind and character thereon placed by the city."

After the opinion was rendered by the supreme court denying relief upon the bill for specific performance of this contract, the hotel company then filed a suggestion of error and represented to the court that rents should be adjudged to it for the occupancy of Esau street by the city, which was denied by this court with a statement in the opinion by Mr. Justice ETHRIDGE that the bill was dismissed without prejudice to any right, if any, of the hotel company to sue for and recover for the use and occupation of the said land which it might have.

It will be noted from the case just above quoted that the city declined to perform the contract within a very few months after its execution, upon the ground that it was *ultra vires,* void, and illegal. It will be observed, also, that under this contract the seller, the hotel company, voluntarily placed the purchaser, the city, in

possession of this land. It will be further noted that it agreed itself to remove the obstructions complained of in the instant case from the lot at its option.

The authority of a municipality is limited by the authority granted to it by the legislature, and all persons who deal with a municipality are presumed to know the powers thereof, and the plaintiff in this case was aware of this rule of law. See *Edwards Hotel & City St. R. Co.* v. *City of Jackson*, 96 Miss. 547, 51 So. 802:

The Edwards Hotel Company also knew that the city of Jackson could not contract except in pursuance to the authority given to it by legislature. See *Steitenroth* v. *City of Jackson*, 99 Miss. 354, 54 So. 955:

"It is elementary law that municipalities have no powers, except such as are delegated to them by the state, either expressly or by necessary implication; and there is no distinction in this respect between governmental powers and those of a private or business nature. The powers of a municipality are granted to it, and must be exercised solely, for the benefit of the inhabitants thereof." *Steitenroth* v. *City of Jackson*, 99 Miss. 354, 54 So. 995.

"The charter powers of a municipality are to be construed most strongly against a right claimed by it and not clearly given by the statute. When there is any doubt as to whether or not a municipality has the power to do or not to do a particular thing, this doubt should be solved against its charter powers, unless it is plainly manifest that the power is confided to the municipality to act."

See *Crittenden* v. *Town of Booneville*, 92 Miss. 277, 45 So. 723, 131 Am. St. Rep. 518.

The sections of the void contract above quoted are, in our opinion, void because they undertook to have the city lease or rent property for street purposes, and there is no express or implied power in a municipality in Mississippi to thus establish a street. The only power conferred is to acquire a street in the statutory manner, and leasing a street for a stipulated price of three thousand dollars per annum, or for any other sum as to that particular stipulation, was of itself *ultra vires* and void.

We desire to emphasize that this contract as a whole was entered into, according to the former opinion passing upon the contract, in violation of an absolute prohibition of the act of the legislature partially quoted above, and, in our opinion, it will be well for those dealing with municipalities and for municipal boards to be governed by the specific prohibitions of the legislature, because a failure to so govern themselves will render the contract void, and no action may be based upon it and no relief accorded for injury accruing by virtue of it.

This court will raise no implied contract where the contract itself is prohibited by law so far as municipalities are concerned. If there be no implied contract, there can be no recovery upon a *quantum meruit* for use and occupation. There can be no relation of landlord and tenant except by contract, express or implied.

The plaintiff has been refused a specific performance of its contract with the city. This contract has been declared void for the reason that it was prohibited. There can be no recovery by an action in tort because the plaintiff put the defendant, the city, in possession, and whatever occupancy there was by the city was with the permission, knowledge, and consent of the hotel company, so that no action in tort could be based upon the relation of the parties to this suit.

Counsel for the hotel company, the appellant, cite the case of *Church* v. *Vicksburg,* 50 Miss. 605, and we shall refer to it briefly.

In that case the street commissioner appropriated, without any express contract, certain brick which belonged to the Methodist Church, and the church sued the city therefor, and this court said:

"The doctrine of implied municipal liability applies to all cases where money or other property of a party is received under such circumstances that the general law, independent of express contract, imposes the obligation upon the city to do justice with respect to the same. If the city obtain money of another by mistake or without authority of law, it is her duty to refund it, not from any

contract entered into by her on the subject, but from the general obligation to do justice, which binds all persons, whether natural or artificial. If the city obtain other property which does not belong to her, it is her duty to re-- store it, or if used by her, to render an equivalent to the true owner, from the like general obligation, the law, which always intends justice, implies a promise. As a general rule, undoubtedly, a city corporation is only liable upon express contracts authorized by ordinance or other due corporate proceedings. The exceptions relate to lia- bilities from the use of money or other property which does not belong to her, or to liabilities springing from the neglect of duties imposed by the charter, from which injuries to parties are produced. *Argenti* v. *San Fran- cisco,* 16 Cal. 255; 1 Dillon on Municipal Corporations, 476, section 384.

''In *Seagraves* v. *Alton,* 13 Ill. 371, the court held that a contract was implied on the part of a city, which was bound to support its paupers, and which had refused to pay a person who had furnished a pauper with necessa- ries. Here it will be noted that there was no express re- fusal on the part of the city to support the pauper, and yet a promise was implied. This implication is a pure fiction to support what the court regarded as a just claim.

''It may be observed, that when it is sought to render a municipal corporation liable for the act of servants or agents, a cardinal inquiry is, whether they are the servants or agents of the corporation. If the corpora- tion appoints or elects them, and can control them in the discharge of their duties, can continue or remove them, can hold them responsible for the manner in which they discharge their trust; and if those duties relate to the exercise of corporate powers, and are for the peculiar benefit of the corporation in its local or special interest, they may justly be regarded as its agents or servants, and the maxim of *respondeat superior* applies. 2 Dil- lon, sec. 772.''

Our observations as to this church case are that it has no application to a case where specific performance against a city is denied because the contract was in positive, open violation of an express statute under which and by which the city was controlled; nor does it apply to a contract which has been declared to be illegal and void. In the case *supra,* the city had the right to purchase brick and use them on its streets; and it was right to hold it liable for that which it assumed to do without a contract when it might have done the thing if it had contracted to do so.

How different from the case at bar! The suit is maintained here for the use and occupation by the city of a piece of land which it undertook to use as a street, according to the declaration, which it had no right to do—never had authority to lease a street—never had authority to make this contract, as held by this court.

The general law would not set up an implied contract where the contract cannot in any event be entered into, is prohibited, and has been declared *ultra vires* and void; and more especially where a court of equity has refused to require specific performance or grant any relief. The general rule, it may be with some rigidity in the instant case, must be applied here, and there is no obligation on the part of the taxpayers to pay taxes upon an implied contract when that contract has been declared *ultra vires,* illegal, and void by the courts of the land. And the parties entering into such contract with notice of the peril must suffer the consequences.

It would serve no good purpose to review the authorities in other states. Suffice it to say that the cases cited seem to be actions based upon torts, and no case where implied contracts are set up and damages awarded is based upon facts like those here where specific performance of the contract, including reasonable rents, had been denied in a court of equity because the contract was *ultra vires* and prohibited by law.

We quote with approval this statement from the text 19 R. C. L. 1061:

"While the power to contract is inherent in every municipal corporation with respect to any subject-matter within its corporate powers, the doctrine of *ultra vires* has, with good reason, been applied with greater strictness to municipal bodies than to private corporations, and, in general, a municipality is not estopped from denying the validity of a contract made by its officers, when there has been no authority for making such a contract. Since the powers of a municipal corporation are wholly statutory, every person who deals with such a body is bound to know the extent of its authority."

It is generally held that when a contract has been entered into by a municipal corporation with respect to subject-matter which was not within its corporate powers, the corporation cannot be held liable for the contract whether the other party thereto has fully carried out his part of the agreement or not, and since the corporation cannot bind itself directly it cannot be held liable, upon an implied contract, to pay for benefits received under an agreement entered into by it in relation to subject-matter beyond the scope of its corporate powers.

As analogous to the situation here, we cite the cases of *Amite County* v. *Mills* (Miss.), 102 So. 465, *Smith County* v. *Mangum*, 127 Miss. 192, 89 So. 913, and the authorities referred to in the Mangum case wherein this court has held as to counties, that the county is not liable on a *quantum meruit* for the construction of roads where mandatory provisions of statutes granting powers to boards of supervisors have not been complied with. The rule is much more rigid as to municipalities and would certainly apply strictly where the act not only is not authorized but is specifically prohibited.

The demurrer was properly sustained by the court below.

The judgment of the lower court will be affirmed.

*Affirmed.*

138 Miss.—42.

Anderson, J. (dissenting).

In my judgment the majority opinion is squarely in the face of the holding of this court in *Crump* v. *Colfax County,* 52 Miss. 107, *M. E. Church South* v. *Vicksburg,* 50 Miss. 601, and the greater number and better reasoned authorities in other jurisdictions. 7 R. C. L. 946, section 22; 15 C. J. 559, 560, section 256, and cases in notes. It was held in the Crump case that a county was liable on an implied contract for the reasonable value of benefits received by it by virtue of a void contract. The contract under consideration in that case, although held void because the statute authorizing it had not been pursued, was about a subject-matter concerning which the county could have lawfully contracted. The contract was held void because it was not evidenced by order entered on the minutes of the board of supervisors. The board was authorized by statute to contract for the lease of a suitable building for county offices. A void contract for the purpose was made. By virtue, however, of the void lease, the county officers occupied the leased building. The county refused to pay the lessor the agreed rental therefor because the contract of lease was void. The court held that notwithstanding the illegality of the contract, the lessor was entitled to recover as upon an implied contract the reasonable rental value of the building so rented and used by the county; that the county would not be permitted to receive the benefits without paying the reasonable value thereof.

In the M. E. Church case, the city of Vicksburg, without the consent of the owner, the church, took and converted a lot of brick. There was no authority of law whatever for the action of the city. The city was held liable upon the doctrine of implied contract. It was held that the city having converted the property of the owner was under duty either to restore the property or its equivalent in value; that when the brick were taken and

converted the law implied a promise on the part of the city to pay their value to the owner.

The supreme court of the United States and the courts of many of the states, as will be seen by reference to the above citations to Ruling Case Law and Corpus Juris, have held that where a county receives and retains substantial benefits under a contract which it was authorized to make, but which was void because defectively executed, it was nevertheless liable on an implied promise for the reasonable value of the benefits received.

Undoubtedly the city of Jackson had the right to acquire the land involved either by condemnation or purchase and conveyance for use as a street. Certainly there is no necessity of citing authorities to that effect. This is a case therefore where the city by pursuing the law could have acquired a valid conveyance to this strip of land. It was a subject-matter about which the city could have legally contracted. The contract it did make, as this court held, was absolutely void. By it no title passed to the city. The rights and obligations of the respective parties set out in the contract were wholly unauthorized by law. But it should be borne in mind, as stated above, that there was no want of power on the part of the city to purchase the land. The contract was void because the power was exercised in an illegal manner. The majority opinion holds, however, that the contract was *ultra vires.* That means that the making of the contract was beyond the power of the city, beyond the scope of its authority. 3/Bouv. Law Dict. (Rawles' 3d Ed.), p. 3345. In my judgment there is where the court has gone wrong; that is the turning point in this case. I concede that if the city made a contract beyond the scope of its powers, the contract is void and there is no liability either on the contract as made or upon an implied promise to pay for benefits received thereunder. But that is not the case here; this was an attempt to purchase land by the city for a street—a thing that could have been legally done, a thing within the scope and au-

thority of the municipality, a thing not *ultra vires.* The contract, although void, resulted in the city receiving benefits, namely a street for a certain period of time for the traveling public. Appellant in the meantime lost the use of its property, and in addition the city by the construction of a street and sidewalks thereon damaged it. Appellant sued not only for the use of the property by the city for a street, but also for the damage done it by converting it into a street and sidewalks. Why should not the city pay for the benefits received by it and also for the damage done appellant's property? I am unable to see any reason why it should not.

Under the majority opinion, what is going to become of the rights of landowners in municipalities under section 17 of the Constitution, which provides that private property shall not be taken or damaged for public use except upon due compensation being first made, etc.? It has been held in several cases that this constitutional provision applies to municipalities and prohibits them from taking or damaging private property without due compensation, and that both direct and consequential damages should be allowed the owner. *Vicksburg* v. *Herman,* 72 Miss. 211, 16 So. 434. And it has been held under this constitutional provision that a city, by lowering an established grade according to which abutting lots had been improved, had to compensate the owners for all damages thereby sustained. *Vicksburg* v. *Herman, supra; Robinson* v. *Vicksburg,* 99 Miss. 439, 54 So. 858; *Jackson* v. *Williams,* 92 Miss. 301, 46 So. 551; *Slaughter* v. *Meridian Light Plant,* 95 Miss. 251, 48 So. 6, 1040, 25 L. R. A. (N. S.) 1265. And it has been held also under this provision of the Constitution that where a municipality vacated and closed a street, it deprived the owner of abutting lots of a right which was a property right, and which could not be taken except on due compensation being first made. *Laurel* v. *Rowell,* 84 Miss. 435, 36 So. 543; *Berry* v. *Mendenhall,* 104 Miss. 94, 61 So. 163. The city of Jackson took appellant's property for a street

and damaged it. That is undisputed. The fact that it was used and damaged by virtue of a void contract does not relieve the city from liability for such use and damage, for in its taking and use the city acted within the general scope of its powers, although it acted illegally. The landowner whose property has been taken for a street by a municipality by virtue of a void condemnation proceeding may recover his property as well as the damage done it while so unlawfully held by the municipality. I am unable to see the difference between an unlawful taking by condemnation and an unlawful taking by contract. Except in my opinion for a greater reason compensation for use and damage is due in the latter case. According to the reasoning of the majority opinion, a municipality could never be held liable for a tort even though acting within the general scope of its powers, for all such acts would be *ultra vires*. If that be true, what becomes of all the tort cases in our books growing out of defective streets and sidewalks of municipalities as well as other wrongs committed by them? There is no statute making them liable.