BOND, STATE SUPERINTENDENT OF EDUCATION, v. TIJ FUNG
*et al.*[*]

(Division A.    Oct. 10, 1927.    Suggestion of Error Overruled Nov. 21, 1927.)

[114 So. 332.    No. 26333.]

1. MANDAMUS. *Bare assertion in record that Chinese boy was not granted privilege of most favored nation under Burlingame Treaty constitutes neither proof nor argument.*

   Bare assertion in record that Chinese boy was not granted the privilege of most favored nation in accordance with Burlingame Treaty, article 7 (16 Stat. 740), by reason of refusal to permit him to attend white school, constitutes neither proof nor argument relative thereto.

2. SCHOOLS AND SCHOOL DISTRICTS. *Funds derived from sixteenth section lands are not controlled by Federal government, being state's own contribution to schools.*

   Funds derived from sixteenth section lands are in no manner controlled by the United States government, but constitute the state's own contribution to its own schools.

3. CONSTITUTIONAL LAW. *Excluding Chinese boy from white school held not to violate Federal Constitution (Constitution United States Amendment 14; Constitution 1890, section 207).*

   Excluding Chinese boy from attendance at white school *held* not in violation of Constitution United States Amendment 14, since according him opportunity of attending colored school maintained with equal facilities, in accordance with Constitution 1890, section 207, is all that is required under such amendment.

*Corpus Juris-Cyc. References: Civil Rights, 11CJ, p. 806, n. 65; Constitutional Law, 12CJ, p. 1174. n. 76, 78; Mandamus, 38CJ, p. 916, n. 68; Schools and School Districts, 35Cyc, p. 822, n. 95.

APPEAL from circuit court of Coahoma county, Second district.     ·

HON. W. A. ALCORN, JR., Judge.

Mandamus by Joe Tij Fung, an adult, and Joe Tin Lun, minor, against W. F. Bond, state superintendent of education, to require him and the teachers of·the Dublin consolidated school to permit minor petitioner to attend and enroll as a student of such school.   Judgment for petitioners and respondent appeals.   Reversed and remanded.                                            ·        ·

*E. C. Sharp,* Special Counsel˙ for Attorney-General's Office, for appellant.                             ·        ·

The only difference between this case and *Gong Lum* v. *Rice,* 139 Miss. 760, is that appellee relies upon the Burlingame Treaty between the United States and China and upon what he claims is a difference in the class of schools maintained for the white and colored in the Dublin school district of Coahoma county.

The contention of appellant is that the Burlingame Treaty has no application in this case.   While it is charged in the petition that the Dublin consolidated school is supported in part by the United States government in that some of the proceeds derived from the rent, lease or sale of sixteenth section land is used in the maintenance and support of said school, this is the only allegation as to the support and maintenance of said school on the part of the United States government, and there is no proof of any support by the Federal government other than that some of the proceeds derived from sixteen section land are used in the support and maintenance of the school.   It, therefore, follows that the United States does not contribute in any wise to the support of this school.   *Jones* v. *Madison County,* 72 Miss. 777.; *City of Corinth et al.* v. *Robertson,* 125 Miss. 31; *Cooper* v. *Robertson,* 18 How. 173, 15 L. Ed. 338.

It follows, therefore, that the Dublin consolidated school district is not supported in whole or in part by the Federal government and that the Burlingame Treaty has no application to the question now before the court. If the government of the United States by said treaty attempted to give to members of the Chinese race special school privileges in the public schools of the state or to deprive the state of its control over its public school system, said treaty would be in violation of the Constitution of the United States and would have been void insofar as it applied to local matters. *Kansas* v. *California,* 206 U. S. 46, 51 L. Ed. 958.

So long as the appellee in this case is afforded educational facilities equal to those furnished to the citizens, he cannot complain. *Cummings* v. *Board of Ed.,* 175 U. S. 528, 44 L. Ed. 262. Uniformity does not mean that the teachers shall all be of the same grade, learning or ability, or that other facilities shall be the same. *Corey et al.* v. *Carter,* 48 Ind. 327, 17 Am. Rep. 738; *People ex rel. Cisco* v. *School Board,* 161 N. Y. 598, 56 N. E. 81, 48 L. R. A. 115.

*Brewer & Brewer* and *Flowers, Brown & Hester,* for appellees.

See section 201, Constitution of Mississippi. Mr. Williams, county superintendent of education of Coahoma county, was placed upon the witness stand and admitted that the child was excluded from the Dublin school upon instructions which he had received from Mr. Bond "to the effect that Chinese children could not compel white schools to let them come." The defendant undertook to show that there was a colored school in the Dublin district available to this child, and in compliance with the state Constitution.

The circuit court passed upon the facts in this case after hearing all the witnesses and decided the facts in

favor of the appellee; and it would indeed be violative of all the authorities in this state to reverse on the facts.

We say that because a Chinese child is living in the state, it is entitled to the equal protection of the law under the Federal Constitution, and to force it to associate with colored children or not attend the white school is a discrimination against it on account of its race and not its color.

: The petition further alleged that there was no other school in this district that the child could attend, and the court having found this fact, this judgment should be conclusive of this fact. See *Mut. Life Ins. Co.* v. *Herrin,* 79 Miss. 381; *Winner & Myer* v. *Williams,* 82 Miss. 669; *Lenoir* v. *Peoples Bank,* 87 Miss. 559.

Can the Constitution of Mississippi be evaded, when this Constitution requires that a uniform system of public schools shall be maintained, where all the educable children between the ages of five and twenty-one years may attend, by simply building a house, employing an incompetent teacher and putting him in charge of a sort of farming business and calling it a school, even though it is satisfactory to a certain race of people? If so, is this not a direct violation of that provision of the Federal Constitution which provides that every person within our borders shall have the equal protection of the law?

The general rule covering a number of the questions involved in this cause is laid down in 24 R. C. L., pages 653, 654, and 655, being section 11. In the notes to this section, the cases cited are in point and are controlling.

Counsel for appellant intimate that mandamus is not the proper remedy in this case. In answer to this we cite the case of *Moreau* v. *Grandich,* 75 So. 434, and the case of *State* v. *Duffy,* 8 Am. Rep. 713.

Since the adoption of the Fourteenth Amendment to the Federal Constitution any public school system devised by the states must make equal provision for the education of all children of school age, irrespective of race or color.

Argued orally by *E. C. Sharp,* for appellant, and *Ed Brewer,* for appellees.

McGOWEN, J., delivered the opinion of the court.

Appellee filed in the circuit court of Coahoma county a petition for mandamus to require the state superintendent of education and the teachers of the Dublin consolidated public school to permit him to attend, and enroll him as a student of, said school. Said petition alleges that he (appellee) was a native-born citizen of China, and was, at the time of the filing of the petition, "a good, clean, moral boy" about the age of fourteen years. It is further alleged in the petition that appellee had been attending said school, but that immediately before the filing of said petition, he was notified by the trustees of the school that he would not be permitted to attend said school because the board of trustees had excluded him from so attending solely on the ground that he was of Chinese descent, and, therefore, not a member of the Caucasian race, and that said order had been made in obedience to instructions of W. F. Bond, state superintendent of education, and by H. P. Taylor, superintendent of said Dublin school, and there was no school maintained in said district for the education of Chinese children. The petition charged that the United States has ceded to the state of Mississippi, as trustee, every sixteenth section of land therein, and, in that way, the Federal government is contributing to the support and maintenance of the public schools, and that the state, as trustee, is realizing money which is being expended for the education of children between the ages of five and twenty-one, in the maintenance of schools for four months, and that a part of the funds so used in support and maintenance of the Dublin consolidated school is paid out of the funds derived from the sale of said public lands ceded by the United States government to the

state, as trustee, for the benefit of all children between the ages of five and twenty-one.

The petition further charges that, under article 7 of the Burlingame Treaty between the United States and China (16 Stat. 740), dated July 28, 1868, and ratified by the Senate and signed by the President, on February 5, 1870, appellee, or any other child of educable age, sojourning in the United States, is given the right to attend any of the public schools, therein, article 7 of said treaty, reading as follows:

"Citizens of the United States shall enjoy all of the privileges of the public educational institutions under the control of the government of China and, reciprocally, Chinese subjects shall enjoy all . . . of the public educational institutions under the government of the United States, which are enjoyed in the respective countries by the citizens or subjects of the most favored nation."

The petition further charged discrimination against Chinese children, and that this Dublin consolidated school is the only school conducted in said district available for appellee as a pupil.

The attorney-general filed a plea of general issue and much proof was taken, and the circuit judge ordered mandamus to issue, directing those in authority to admit Joe Tin Lun as a pupil in the Dublin consolidated school.

It is unnecessary to set out all the testimony. The county superintendent of education, on behalf of petitioner, testified that there were negro schools accessible in the same district, maintained, financially, in the same way as the Dublin consolidated high school; that Lun could be taught the same subjects, for "they have the same books as they do at the white school, but the type of instruction is very much inferior to the white school; there is no comparison;" that the same rules and regulations, and the same law governing the maintenance are applied to white and negro schools alike, but that the

Dublin consolidated school district has a levy in addition to the regular support fund that the negro school does not have; but that, under the law, the negroes have a right, upon proceedings, to have a consolidated school for negro children, well equipped with regular licensed teachers, who stand teachers' examinations, and are licensed in the same way, upon the same examination, and under the same provisions as the white teachers; but that, in his opinion, the negroes were not possessed of such qualifications as the whites, and therefore their teachers do not rank with white teachers; and that the teachers in this negro school, however, are all regular licensed teachers, and capable of teaching the third grade, the grade in which Lun was shown to be; and he said that the law was fully complied with.

There was no effort to show how the Burlingame Treaty operates in China, or its application to citizens or subjects of the most favored nation. No proof was taken, nor is our attention directed in brief of counsel to any violation of this treaty in the assignment of Lun to the colored schools of Coahoma county, and the refusal to permit him to attend the white school because he does not belong to the Caucasian race.

Appellee first contends that the Chinese boy, Joe Tin Lun, is entitled to be admitted to the Dublin consolidated school because of the above-quoted article 7 of the Burlingame Treaty. We do not think the record in this case discloses any effort to show that Joe Tin Lun is not granted the privilege of the most favored nation; in fact, no reference is made to it, save the bare assertion, which is neither proof nor argument. He is assigned to a school, under the rule announced in *Rice* v. *Gong Lum,* 139 Miss. 760, 104 So. 105, with American citizens.

Appellee next alleges that he was entitled to be admitted as a pupil in a white school because the United States government supports and maintains said school, in part, by proceeds derived from sixteenth section lands and used in support of this school. This contention is

strained and cannot be upheld for the reason that this court is committed to the proposition that funds derived from sixteenth section lands are, in no wise, controlled by the United States government.  They are the state's own contribution to its own schools, citing *Jones* v. *Madison County,* 72 Miss. 777, 18 So. 87; *City of Corinth* v. *Robertson,* 125 Miss. 31, 87 So. 464, and *Cooper* v. *Roberts,* 18 How. 173, 15 L. Ed. 338, in which the United States supreme court said:

"The trusts created by these compacts relate to a subject certainly of universal interest, but of municipal concern, over which the power of the state is plenary and exclusive.  In the present instance, the grant is to the state directly, without limitation of its power, though there is a sacred obligation imposed on its public faith."

As illustrative of the position taken by us, we quote from *Cumming* v. *Board of Education,* 175 U. S. 528, 20 S. Ct. 197, 44 L. Ed. 262, in which Justice HARLAN, speaking for the court, said:

"The education of the people in schools maintained by state taxation is a matter belonging to the respective states, and any interference on the part of Federal authority with the management of such schools cannot be justified except in the case of a clear and unmistakable disregard of rights secured by the supreme law of the land."

It is next insisted that the right to go to school is a property right, of which he is deprived, thereby violating the Fourteenth Amendment of the Constitution of the United States.  We have fully gone into that phase of this case in the recent case of *Rice* v. *Gong Lum,* 139 Miss. 760, 104 So. 105, where we held that, under section 207 of the Constitution of 1890, it is provided there shall be separate schools for the white and colored races; that the term "white race" is used in said section of the Constitution as limited to the Caucasian race, and the term "colored race" is used in contradistinction to "white race," and involves all other races; and that,

under our school laws, provision was made for every child by a division of schools, one for each race, thus keeping the races separate.

We further held in that case that the dominant purpose of the Constitution in providing for the separation of the races was to preserve the purity and integrity of the white race, and prevent amalgamation, and to preserve, as far as possible, the social system of race segregation. And in that case we also held that the Chinaman was entitled, under the law to all the benefits of the colored public school; that consolidated schools are simply common schools conducted as other common schools, fairly and impartially; but still it cannot be said that any child may, because of some fancied disability of the teachers, or some fancied inequality in the conduct of the schools, by mandamus, force himself into a school which, under the Constitution, he is not entitled to enter.

Under the Constitution of the United States, and the state of Mississippi, the negro is an American citizen, and the law accords him that right. Then, how can an alien Chinaman complain when he is assigned to a school provided, under our law for the colored races? We thus permit him to share with our own American citizens our benefits and privileges, and enjoy all of the benefits and privileges accorded to one of our own citizens.

We cannot approve the idea that, by mandamus, a member of the colored race may be forced into a white school; but he may institute proper proceedings to require the school authorities to furnish a colored school equal and uniform, in every particular, for the colored race.

As was said in *Cory* v. *Carter,* 48 Ind. 327, 17 Am. Rep. 738:

"Under our Constitution, our common school system must be general; that is, it must extend over and embrace every portion of the state. It must be uniform. The uniformity required has reference to the mode of government and discipline, the branches of learning taught, and the qualifications as to age and advancement in learn-

ing required of pupils as conditions of their admissions. It does not mean that all the schools shall be of the same size and grade, or that all the branches of learning taught in one school shall be taught in all other schools, or that the qualifications as to age and advancement, which would admit a pupil in one school, would entitle such pupil to admission into all the other schools. Uniformity will be secured when all the schools of the same grade have the same system of government and discipline, the same branches of learning taught, and the same qualifications for admission.''

We belong to that class of people who believe that there are no two things created exactly alike. Things are similar to each other. So it is with schools. They have a similarity, but it is certain that no two schools in Mississippi, or any other state, are exactly alike. The testimony of the county superintendent of education in this case shows that equal facilities are furnished to the two races, white and colored, and, in our opinion, that is all that is required under the Fourteenth Amendment. In its main features, this case is on ''all fours'' with the case of *Rice* v. *Gong Lum, supra.*

It is our further opinion that section 207 is in aid, and for the protection, of the colored races. The friction, disorder, and general unhappiness occasioned by an effort to associate the Caucasian race together with the other, the colored race, is too apparent to need illustration or repetition here. Section 207 was also designed to promote the peace, quietude, and happiness of all the races, by eliminating close and intimate contact, during the hot season of youth, between the white and colored races, so that the prejudices and passions engendered by race consciousness might be avoided. This lawful separation dissipates, rather than agitates, racial clashes, which produce hate in action of riot—tumult, breaches of the peace, and, sometimes, capital crimes.

The spirit of the section, honestly enforced, can but promote a higher degree of peace and happiness, as intelligence dominates ignorance, and virtue overtops vice.

We think the court below erred in granting the writ of mandamus herein.

The case is therefore reversed, and the petition dismissed.

Reversed, and judgment here dismissing the petition.

*Reversed.*