## COAHOMA COUNTY *v.* KNOX.

(Division B.    Sept. 30, 1935.)

[163 So. 451.    No. 31807.]

Brewer & Hewitt, of Jackson, for appellant.

E. C. Sharp and Creekmore, Creekmore & Capers, all of Jackson, for appellee.

792

Argued orally by **William H. Hewitt**, for appellant, and by **H. H. Creekmore**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

Coahoma county filed suit against Rush H. Knox, the former Attorney General of Mississippi, to recover an allowance of two thousand dollars made by the board of supervisors for the purpose of employing an attorney to represent the county in the suit of W. F. Bond et al. v. Joe Tij Fung et al., 148 Miss. 462, 114 So. 332, and to pay the expenses of such litigation. The order allowing payment of this fund reads as follows: "Whereas, there is now pending in the Supreme Court of the United States the case of Joe Tin Lun v. Bond [279 U. S. 818, 49 S. Ct. 263, 73 L. Ed. 974], wherein there is involved the question of Chinese children attending white schools under certain conditions, and it appearing to the board, from a personal conference with the Hon. R. H. Knox, Attorney General of the State of Mississippi, that a large expense has been incurred in the matter of the preparation of briefs, etc., including traveling expenses, and it further appearing to the board that the above case is one directly involving the schools of this County, inasmuch as the litigation originated and was tried in this County; and the board being of the opinion that said case is of vast importance to the school system of this County, it is, therefore, ordered that the sum of two thousand dollars be and is hereby appropriated for the purpose of paying the expenses, including attorneys fees, of such attorneys, other than the Attorney General, in connection with said cause in the Supreme

Court of Mississippi and the United States. Warrant to be payable to R. H. Knox, Attorney General, and mailed to him at Jackson, Mississippi.''

Upon this order a warrant was issued payable to Rush H. Knox, reading as follows: ''State of Mississippi, Coahoma county. No. 9046. Depository of said County, Board of Supervisors, March 7, 1927, term. Pay to Rush H. Knox, Atty. General, or order, two thousand and no one-hundredths Dollars allowed him by the Board of Supervisors out of the General County Fund, to defray exp. in case Supreme Court U. S. Joe Tig et al. Given under my hand and seal of office this day, Mar. 7, 1927. Claim no. order Minute Book 6, page 375. Y. E. Howell, Chancert Ct. clerk and Board of Supervisors. Payable Planters National Bank.''

The suit mentioned in the order allowing two thousand dollars was a proceeding by a Chinese citizen to compel his admission into the white schools of Coahoma county. The county, as such, was not formally made a party defendant to the suit, but the state and county superintendents of education and the trustees of the particular schools in Coahoma county were made defendants to such suit.

The attorney-general, through an assistant then in his office, appeared in the circuit court and represented the trustees and the superintendents of education. There was a judgment in favor of Joe Tij Fung commanding the trustees to receive him in the public schools. From this judgment, an appeal was taken to the Supreme Court of this state, where the judgment was reversed and the admission of the Chinese student into the white schools was refused, from which an appeal was prosecuted to the Supreme Court of the United States. In the meantime, the Assistant Attorney General who first appeared had resigned, but was induced by the Attorney General to remain as counsel in the case; the Attorney General agreeing to see that said attorney specially em-

ployed was paid a fee for his services, and that the expenses incident to the suit were also paid. The Attorney General appeared before the board of supervisors and requested that they employ an attorney to represent the county in said suit, as he had no funds with which to employ attorneys in the United States Supreme Court, and an order was made in pursuance of this understanding, and it was left to the Attorney General to select an attorney to represent Coahoma county in this litigation.

The defendant in the court below testified that he asked the board to make the selection of an attorney to represent them, but the board preferred to leave it to him to make the selection of such attorney.

It appears from the order that the money was allowed for the purpose of paying the expenses, including attorneys' fees, other than the Attorney General, in connection with said cause, in the Supreme Court of Mississippi and of the United States. The warrant was issued by the board of supervisors, collected, and paid over to E. C. Sharpe, the special attorney who had appeared in the suit as Assistant Attorney General, and the attorney-general received no part of said sum, and the warrant was issued and paid to said E. C. Sharpe with the understanding that no part of it would go to the Attorney General.

The court below denied the county's right to recover, and from that judgment this appeal is prosecuted.

There was a plea of the general issue in the court below, with notice thereunder setting up substantially what is stated above.

It is first insisted by the appellant that the county was not interested in the controversy, and had no authority to allow attorney's fees, and that it was the duty of the Attorney General to represent the public interests.

The public policy of the state and the counties is that there shall be separate schools maintained for the children of the white and colored races and this is provided for in section 207 of the state constitution, and also by

statutes to carry out the policy of the constitution, which is well calculated to promote peace and good order in the schools.

By section 263 of the constitution of Mississippi, marriage between a white person and a negro, or mulatto, or a person having one-eighth or more of negro blood, is prohibited. By section 2361, Code 1930, a marriage between a white person and a Mongolian, or a person having one-eighth or more of Mongolian blood, is prohibited, and is unlawful and void.

We think it is within the power of the state to enact such a policy and to make it effective, and that one of the means of making same effective is to segregate the races in the public schools so that there will be but small contract between them.

The law has provided for equal, but separate, accommodation for the races in schools and in other public places thus carrying out the policy of segregation which has been deemed wise and necessary for the peace and harmony of the state.

We do not think the interest of the county to employ counsel in suits is limited to a pecuniary interest, but that it is to the interest of the county to maintain the peace and harmony of its inhabitants.

By section 214, Code 1930, the board of supervisors of a county has jurisdiction over various matters, and may levy taxes to meet the demands therefor; and the county, being under the duty to provide separate schools and to carry out the public policy of the segregation of the races in the schools, thus had a pecuniary interest in the subject-matter, because if the Chinese citizen should be adjudged not to be a member of the colored race it might be necessary, and would be if the policy was carried out, to build a special school for Chinese citizens.

In the suit mentioned in the order of the board of supervisors, and in a similar suit from another county,

Chinese were held, by this court, to be members of the colored race. That question had not been theretofore passed upon in this state, and the treaty obligations involved in the litigation might have affected the county's rights had the suit not been properly defended. In Mississippi, the question as it affects the Chinese is somewhat local, in that many of the counties do not have such citizens within their boundaries.

We are therefore of the opinion that Coahoma county had such an interest as to warrant it in employing counsel to defend the suit in its behalf.

By section 271, Code 1930, a suit may be brought in the name of the county where only a part of the county, or of its inhabitants, are concerned, and where there is a public right of such part to be vindicated.

We think this section is applicable to this litigation by the board of supervisors.

It is next contended that the order of the board of supervisors was void and the allowance illegal because the section of the statute was not cited in the order authorizing the allowance under section 255, Code 1930.

It is true this section requires the board of supervisors to cite the section under which the allowance is made, and where it is not done no course of proceedings on the order can be instituted to compel the allowance or to sue the county in default of payment.

In Beck v. Allen, 58 Miss. 143, it was held that under the statute as then written, the clerk was prohibited from issuing a warrant upon an order that did not cite the section. This prohibition on the clerk is not in the present statute. It is still a requirement, so far as a course of proceedings is concerned, but it was held in Okolona v. Chickasaw County, 171 Miss. 424, 157 So. 690. that where the law authorized an allowance which had been made and the money paid over to an object authorized by law, the county could not recover from the person receiving such money, although the section au-

thorizing the allowance was not cited in the order allowing it. At page 432 of 171 Miss. at page 693 of 157 So., the court said: "It is therefore seen that the cases allowing recovery reason back to the foundation that recovery of the payment can be had when and because the person who has received it has no right in equity and good conscience to retain it; from which it is to be seen also that the want of equity and good conscience in behalf of the payee is a necessary element to the existence and enforcement of the rule. When a payment has been made by a county to an object not authorized by law or which is entirely beyond the scope of the authorized jurisdiction of the county board, in making the payment, the payee has received money which ex aequo et bono belongs to the county and which he is not entitled to retain. Or recurring to the numerous cases above mentioned, where unlawful fees have been recovered back, when an officer has been paid fees or received allowances when there was no statute so authorizing, or else the allowances were in excess of plain statutory limitations, he has received money to which ex aequo et bono he was not entitled and is not entitled to retain. On the other hand, where the appropriation has been made to an object authorized by law, and which it was within the lawful jurisdiction of the board to make, and the services or the work or the supplies represented by the payment have been fully rendered or furnished, all in good faith, and in the belief that all necessary procedural steps have been taken, the elemen' of equity and good conscience rests then on the side of the payee, and recovery back cannot be had merely because some procedural defect in the contract or in the the minutes or some other like matter has, upon subsequent examination, been found to be insufficient or defective. This court has firmly held to the law that when before payment has been made by the board, it has been discovered that there is some defect in the minutes or

other proceedings as a consequence of which the claimant has no legally enforceable claim, he cannot recover from the county although he has rendered the services or done the work or furnished the materials and the county retains the benefit thereof. This has resulted in many hard cases, as, for instance, Smith County v. Mangum, 127 Miss. 192, 89 So. 913, and see, also, Amite County v. Mills, 138 Miss. 222, 102 So. 465, 737, in which two of the judges dissented. But this is done in order to guard the interest of the county in the preservation of the benefits of competitive bidding, that contracts shall be reasonably precise and specific and shall be made in the open and spread in the open upon the minutes. It is enough, however, in thus guarding the interests of the county, to require that a party dealing with the county must see to it that, in all its essential features his contract with the county has been legally made, and that, if not, he shall not be entitled to sue to recover his pay; and it is not necessary to extend the rule, hard as it is already, to that extreme limit that, when the contract or obligation was one which the county was authorized to make or to incur, and the board and the party have in good faith believed that all steps essential to the liability of the contract or obligation have been taken, and the work has been done, or the supplies delivered, and payment has been made therefor, and all have supposed the matter to have been in good order, then upon subsequent discoveries of technical illegalities to uproot the payment and allow it to be recovered back.''

We think this case comes squarely within the principles announced in Okolona v. Chickasaw County, supra, and the judgment of the court below will therefore be affirmed.

Affirmed.