CALDWELL *et al. v.* SMITH.

(In Banc. Jan. 13, 1947.

[28 So. (2d) 657. No. 36267.]

Tighe & Barksdale, of Jackson, for appellants.

Forest G. Cooper and Jack E. Harper, Jr., both of Indianola, for appellee.

Argued orally by **Henry E. Barksdale**, for appellants.

**L. A. Smith, Sr., J.**, delivered the opinion of the court.

Appellants sued appellee in the Circuit Court of Sunflower County because "The plaintiffs shipped on October 25, 1944, upon order and request of the defendant, to the defendant at Drew, Mississippi, six Model 'D' chain type lime spreaders, at a price of $438.00 each, the total sale price being $2,190.00, plus sales tax of $43.80. That the defendant, on said date, received and accepted the six lime spreaders, and took possession of same." The jury returned a verdict for appellee, and judgment was entered accordingly.

The appellee refused to pay for the spreaders after demand, pleading that he never did agree to purchase the equipment, or any part thereof; and that the appellants approached him for the purpose of selling the equipment and that "the plaintiffs of their own violation (sic) hauled and brought at their own expense five of said alleged lime spreaders, and under the supervision of their own agent installed some of them on some of his trucks and attempted to demonstrate to him that their equipment which was still theirs would satisfy him to the point where he would in the future be willing to purchase the same; that the plaintiffs made long, repeated efforts to make said equipment work and operate satisfactorily, over a long period of time, and at the repeated failures to operate the plaintiffs would hold out the hope that they would take out broken parts and install larger and stronger parts, or that they would repair broken parts and would hold out the further hope to him that they would determine the troubles and defects of said equip-

ment and would be able to remedy it; that the defendant gave to the plaintiffs every opportunity to make said demonstration on not just one but on several of said items of equipment in different fields, under different conditions . . ." The appellee finally returned the spreaders to the lot in Drew where he originally permitted them to be attached to his trucks.

Appellee was engaged in the business of trucking, and in the fall and winter hauled, for planters and farmers, lime in dumpers. This lime was dumped in piles at designated spots in certain fields of his patrons. Appellants distributed Model "D" chain type lime spreaders, which were recommended to be more economical, efficient, and speedy in their operation than the old dumping trucks. Mr. Reed, a salesman of appellants, having checked with AAA, learned that appellee was a contractor handling lime under the AAA program. He made contact with appellee over the telephone and also interviewed him at Rolling Fork, where he claimed to have sold appellee the five lime spreaders, for the price of which this suit is brought. This agent said that he agreed to deliver this equipment by truck and install it on appellee's trucks, and described the lime spreader as follows: "It is a wooden bed with a chain connected up by a dump truck. You throw it in with a lever and the chain starts and drops down and spills it around on the ground." And further: "The basis on which it worked, when the power was turned on,—the gear is over on the right side,—the shaft goes through and works the fan at the same time it pulls it out from the bottom."

This agent stayed at Drew with this equipment, as he said, in order to see that it worked and if anything was wrong with it he wanted to correct it and start it off right. He furthermore said that appellee had promised to pay the purchase price as soon as he collected some money from the AAA which was due him. Mr. Reed denied that appellee asked that the equipment be installed on a trial basis. He furthermore testified that he serviced

these machines upon a call from appellee to him at Belzoni, even to the extent of ordering parts which they did not have on hand, and he would then return to Drew and install the new parts. The spreaders were installed on or about the 25th day of·October, 1944; and this agent of appellants stayed at Drew approximately two weeks, when he left, according to his testimony. He returned in December, after the spreaders had all been removed from the appellee's trucks, except one, and had been returned to the lot .where they had originally been installed. According to the further testimony of witnesses the trucks were more or less in trouble continuously, and various parts would break or get out of order. It appears from the evidence, accepted by the jury, that from October 25th to the early part of December, 1944, appellee was in possession and use of these spreaders for the purpose of testing their efficiency in spreading this lime on the lands of his customers.· As stated, supra, for approximately two weeks of this period appellants' agent practically stayed at Drew in order to service the machines and to start them off right, as he said.

It appears to be·the contention of appellants that the use of this equipment by appellee between the departure of Mr. Reed and his return in December, when appellee moved it from his trucks, constituted acceptance of the spreaders and obligation to pay the purchase price. Appellee and his witnesses contradict the adverse testimony of appellants' agent on practically all points, in line with the allegations of his plea summarized supra. According to the evidence for appellee, which the jury accepted by its verdict, his business was hauling lime in the winter months, and then his lime operations were performed by the use of dump spreaders, that is, he hauled it and dumped it in a pile on the ground, and then the planter or farmer spread it as he saw fit. Appellee had never seen a lime spreader when appellants' agent approached him for a sale, and with the representation to him that the equipment would spread lime automatically, efficiently,

and economically. He stated that his agreement with Mr. Reed was that "If they would do the work satisfactorily, I would buy them," and that he did not buy the lime spreaders then or ever; and that he refused to sign an order.

The lime spreaders were brought to Drew and installed, and Mr. Reed stayed there approximately the two weeks. He was there also during the remaining three or four weeks for a substantial part of the time. The gear on the spreaders broke; the chain that was running the fans broke. The gears would twist the shaft and the fan into and the universal joints would break. And these things were constantly happening. The fifth spreader was never installed as appellee had only four trucks. The above incidents are cited simply as typical of the testimony in corroboration of appellee by his farmer and planter patrons, his truck drivers, the machinists, mechanics, and others. The evidence seems to be clear that this particular equipment was not efficient in its operation or mechanically sound in its construction.

Appellants contended that circumstances support their claim of sale; that appellee spread 1200 tons of lime at a dollar a ton with this equipment during the five or six weeks appellee retained it; that he kept it in continuous use after Mr. Reed's two weeks stay in Drew; that appellants paid Mr. Reed his commission for the sale; and that appellee had spent $400 of his own money repairing these machines. Appellee cites certain other circumstances as controverting the claims of appellants: that he refused to sign an order for this equipment; that Reed brought the spreaders to Drew on appellants' trucks and installed them on those of appellee, and stayed there approximately two weeks, seeking to make them work; and continued to come there a substantial number of times thereafter, until appellee had finally rejected the spreaders as unworkable and unusable; and that he quit using the lime spreader before the spreading season was

over, reverting to his original system of dumping lime; that he gave appellant every opportunity to prove the practicability and durability of these machines, even spending $400 of his own funds in furtherance of the test, and only after conviction that the equipment was not suitable did he reject it finally as such; that he was being importuned all along by Mr. Reed to permit him to continue to try to make the machines workable, and promising that he could and would do so.

The jury heard the sharply conflicting testimony and resolved the issue on all contradictions in favor of the appellee. And the only assignment of error here is that the court erred in overruling appellants' motion for a new trial because the verdict of the jury was against the great, overwhelming weight of the evidence, since there was an offer by appellants to sell said lime spreaders to appellee and acceptance by appellee verbally, and by the retention and use of the machines, so that appellee accepted the machines and waived any defects in them by his retention and use thereof.

Appellants press their argument ably. Their position, generally, is represented by this quotation from 55 C. J., Sales, Sec. 491, p. 498: "Generally acceptance will be implied if the buyer retains and uses the goods as his own, and the mere fact that he complains of defects in the goods will not affect this result. . . . The effect of the use of the article may be modified by the circumstances surrounding such use, as where the use is for the purpose of trial, especially when the seller represents that the machine on trial can and will be made to work properly, although where the goods are patently defective the buyer cannot claim that his use thereof was merely to test them. But it will be regarded as an acceptance if the buyer prolongs the trial beyond a reasonable period, or uses more of the article than is fairly and reasonably necessary in making the test, unless the seller consents thereto. . . ."

Also this from 55 C. J., Sales, Sec. 780, p. 803: "A use of the goods after knowledge, or opportunity for knowledge,

of their defective condition, may evidence a waiver of a breach of warranty . . ." This text cites as authorities J. B. Colt Co. v. Mazingo, 141 Miss. 402, 106 So. 533; J. B. Colt Co. v. Cooley, (Miss.), 107 So. 891; Lumbermen's Supply Co. v. Poplarville Sawmill Co., 117 Miss. 274, 78 So. 157.

Appellants place most of their reliance upon the case of Stillwell, Bierce & Smith Vaile Co. v. Biloxi Canning Co., 78 Miss. 779, 29 So. 513, in which this Court quoted the following from Benj. Sales (6th Am. ed. by Bennett), Sec. 703: "When goods are sent to a buyer in performance of the vendor's contract, the buyer is not precluded from objecting to them by merely receiving them; for receipt is one thing and acceptance another. But receipt will become acceptance if the right of rejection is not exercised within a reasonable time, or if any act be done by the buyer which he would have no right to do unless he were the owner of the goods."

In Alig v. Lackey, 114 Miss. 392, 75 So. 139, 140, we said: "The defendant having retained the machinery after knowledge of the defects and used the machinery thereafter, could not, when sued on the note, rescind the trade. . . ." There are other cases to the same effect correctly stating the law applicable to their circumstances cited in the brief of the appellants. They are not in point under the facts of this particular case. The difference is that in the case at bar the retention by appellee of this equipment both during and beyond the two week period, when Mr. Reed was continually at Drew, was done at the request of the appellants in order that they might continue their efforts to put these spreaders in condition for satisfactory use. In the text under Sales, 55 C. J., Sec. 491, supra, it is to be noted that the rule is: "But it will be regarded as an acceptance if the buyer prolongs the trial beyond a reasonable period, or uses more of the article than is fairly and reasonably necessary in making the test, unless the seller consents thereto." Here the seller consented thereto,—in fact, procured it to be done.

The jury, as the sole judges of the weight of the evidence and credibility of the witnesses, and as the trier of the facts, had the right and duty of judging between the testimony of the various witnesses, and by their verdict they adopted the testimony on behalf of appellee,—that the retention of this equipment by appellee was done at the instance and request of appellants. The following questions and answers in the record are sufficient to indicate the pertinent facts of this case on the issue precisely before us, and which facts the jury certified by their verdict for appellee:

"Q. How long did you try to make those spreaders work satisfactorily? A. Until sometime the first week in December—about five weeks.

"Q. At whose instance did you keep on trying them when you found they would not work? A. Mr. Reed's and in some instances the employees. Mr. Reed said: 'Bill, I am going to keep on until they do work.' I said: 'If they won't work, I don't want them.' "

And also the following question and answer: "Q. How often was Mr. Reed there where he himself could see that this equipment was not doing the job properly? A. I would say that he was there four fifths of the time when the equipment was on the trucks." The witness was appellee. The jury believed him and his witnesses, and we are not able to say that the verdict is against the great, overwhelming weight of the evidence. It seems to us to be amply supported by this and other testimony.

We do not feel, therefore, that we should disturb the verdict of the jury, or reverse the judgment of the trial court and, therefore, it is affirmed.

Affirmed.

**Sydney Smith, C. J.,** did not participate in this decision.