CRAIG *v.* WHEAT, et al.

Division B. Oct. 8, 1951.

No. 38170 (54 So. (2d) 383)

Cornelius J. Ladner, and Creekmore & Creekmore, for appellant.

Gex & Gex, Robt. L. Genin, D. M. Russell, Jr., and Wallace, Greaves & Wallace, for appellees.

**Arrington, C.**

Carl N. Craig, State Auditor, instituted this suit against John B. Wheat and others comprising the Board of Supervisors of Hancock County and the surety on their bonds

for an illegal expenditure of county funds. From a decree dismissing the bill of complaint, the auditor appeals.

On March 9, 1946, the legislature of this state enacted Chapter 219, General Laws of Miss. 1946, authorizing the repair, improvement, and construction by the supervisors of roads and bridges in the respective counties of this state and appropriating money to be paid to them by the state for such purposes. Under this act, Hancock County was entitled to the amount of $53,305.40, which sum was duly paid to it. The supervisors of Hancock County paid to one Chester Lee $37,187.50 of this sum. This amount was paid to Lee under an oral contract with the Board of Supervisors whereby Lee was to be paid the sum of $2.00 per yard for gravel placed by him upon the roads at points to be designated by the supervisors. When Lee's claim for gravel was presented for payment, the Chancery Clerk of Hancock County, prompted by his conception of the law, requested that the claim be broken down as follows: (1) the price of the gravel at the pits, (2) dragline hire, and (3) hire for trucks and labor in hauling the gravel. This was done and the accounts were duly allowed upon the minutes in the manner thus indicated. The total of the accounts so allowed aggregated the contract price of $2 per yard for the gravel placed by Lee upon the roads. The State Auditor, on the assumption that the sums thus paid to Lee were paid and appropriated to an object not authorized by law, brought this suit under Secs. 2944 and 2872, Miss. Code of 1942, to recover decrees against the supervisors and their surety for the total amount paid to Lee, which was the sum of $37,187.50, together with interest, damages, and attorneys' fees.

The sole question for decision on this appeal, in view of the conclusions we have reached, is whether this money was appropriated to a lawful or unlawful object. No fraud or wrongdoing is charged, nor is it claimed that the county did not get the full adequate benefit from the money so expended. We are of the opinion that this

case is controlled by the rule announced in Paxton v. Baum, 59 Miss. 531, which case has been consistently followed. Miller, State Revenue Agent, v. Tucker, 142 Miss. 146, 105 So. 774; Causey, State Auditor, v. Jones, 193 Miss. 495, 10 So. (2d) 356; Causey, State Auditor, v. Gilbert, 193 Miss. 756, 10 So. (2d) 451. In this case, Paxton v. Baum, supra, this Court announced the rule that ▇▇ ▇ supervisors were not personally liable for money where it was applied by them to a lawful object over which the supervisors had jurisdiction, no fraud being shown even though they did not comply with the law as to the manner or method of making the appropriation. Was the money in this case applied to a lawful object over which the supervisors had jurisdiction? The question can only be directed to the money expended for dragline hire, and the hire for trucks and labor in operating them. The county certainly had the power to purchase gravel for improving and constructing the roads. ▇▇ ▇ Said Chapter 219 expressly authorizes and empowers the supervisors to construct, repair and improve the roads. That is the ultimate object of the law, and in the absence of some express prohibition, it logically confers authority and power to do all incidental acts necessary to accomplish the ultimate object. Specifically, it would include the power to rent drag lines, to mine the gravel from the pits, and to hire trucks and labor to haul it from the pits and place it upon the roads. The only prohibition against or restrictions upon the power of the supervisors to do these incidental acts is Sec. 11 of Chapter 219, which reads as follows: ''The board of supervisors shall not expend any of said funds for machinery or other equipment or tools.''

▇▇ ▇ Is this prohibition restricted to the purchase of machinery, equipment, or tools, or does it extend the power to hire or rent these in the repair or improvement or construction of rural roads? We think the restriction applies only to using the funds in the outright purchase of these articles. This is the natural meaning of the

words as used in the statute and we are aware of no rule which requires us to apply such a broad construction to the quoted clause as to deny to the supervisors the power to expend funds for hire, or rental of the dragline and trucks and to pay for labor to operate them as above set out. Rather do we think the objects to be accomplished, the circumstances with which we are dealing, call for a strict construction as applied to limitations upon the powers of the supervisors to accomplish the main object of the law.

If the legislature had intended this limitation to apply to rentals, hire, etc., in addition to the prohibitions against purchase, it very easily could have so stated in the act. The primary purpose of the act was the repair and improvement of the roads and bridges of the county—not to purchase machinery for the counties. In construing the power conferred by said Chapter 219, it may be helpful to have in mind that Sec. 170 of the constitution of this state vests in the supervisors "full jurisdiction over roads, ferries, and bridges," subject to regulation by the legislature. Sec. 2890, Code of 1942, provides: "The boards of supervisors shall have within their respective counties full jurisdiction over roads, ferries, and bridges * * *", subject to legislative regulation as set out in Sec. 170, of the Constitution. Again, Sec. 8330, Code of 1942, confers upon supervisors the power and authority, among others, to hire teams and implements and pay for labor, etc., "and may do any and all things necessary to be done to work, construct, reconstruct and maintain the public roads * * *." Keeping in mind then the comprehensive powers vested in the supervisors by said section of the constitution and the statutes discussed above, and construing these with Chap. 219 and the wording of Sec. 11 of said chapter ██ ██ it is our conclusion that the supervisors here had the power to pay for the hire of draglines, trucks, etc., as shown by the accounts presented by Lee to the supervisors, although the clerk was mistaken in his request that they

be broken down rather than made out for the purchase price of gravel placed on the roads. Such payments of the accounts as filed, not being to an illegal object but to an object authorized by law, no personal liability exists against the supervisors and their surety even though they did not comply with the statutory requirement as to the matter of letting the contract for the purchase of gravel. This conclusion renders it unnecessary to pass on the other assignment argued.

Affirmed.

PER CURIAM.

This opinion is adopted as the opinion of the Court, and for the reasons therein indicated, the judgment of the court below is hereby affirmed.