LOVE Co., et al. *v.* TOWN OF CARTHAGE.

June 8, 1953

No. 38774 34 Adv. S. 117 65 So. 2d 568

*Creekmore & Beacham,* Jackson, for appellants.

14

16

*Barnett, Jones & Montgomery,* Jackson, for appellee.

HOLMES, J.

The appellee, Town of Carthage, filed its original and amended bill of complaint in the Chancery Court of the First Judicial District of Hinds County, Mississippi, against J. S. Love Company, a partnership composed of J. S. Love, J. S. Love, Jr., and Howard Ivy, and against Southern Bond Company, a partnership composed of Cecil Inman and Cecil Inman, Jr. The bill sought the recovery of certain funds theretofore paid by the Mayor and Board of Aldermen of the Town of Carthage to J. S. Love Company, and participated in by Southern Bond Company, it being alleged that the payment of said funds was by an ultra vires act of the mayor and board of aldermen and was an appropriation of funds which the mayor and board of aldermen were without authority to make, and was an appropriation of funds to an object not authorized by law. The funds were paid pursuant to a contract theretofore entered into between the appellee and J. S. Love Company, and the exact amount claimed was the sum of $13,170, less such an amount as an accounting might show to have been reasonably and necessarily expended by the defendants in the performance of said contract. It was alleged in the bill that the board of mayor and aldermen of said town determined to erect and install natural gas transmission pipe lines and facilities and a natural gas distribution system for supplying natural gas to the residents of the town under the provisions of Chap. 494 of the Laws of 1950, and that said project was approved by the qualified electors of the town. It was further alleged that in the construction and completion of said project, it became and was necessary (1) to secure the services of a competent and qualified engineer to make a preliminary survey and de-

tailed plans and specifications for the installation of said natural gas system and to supervise the installation of said system; and (2) to secure the services of competent and qualified attorneys to prepare all necessary resolutions, ordinances, and contracts in connection with the planning, construction, and financing of said natural gas system, including the validation of the bonds to be issued and sold for the payment of the cost thereof; and (3) to secure the approval of a recognized bond attorney of the validity of the bonds to be issued by complainant for such purposes and to prepare a maturity and amortization table of the bond issue necessary to acquire said natural gas system; and (4) to negotiate with the Southern Natural Gas Company for a supply of natural gas to the said transmission and distribution system; and (5) to secure a certificate of public convenience and necessity from the Federal Power Commission authorizing the doing of said work and the construction of said project; and (6) to negotiate a contract with a private utility company for the lease of said natural gas system for a period of twenty-five years for sufficient rental to retire all bonds and interest as the same matured and to provide for the maintenance and upkeep of the system during the lease period, and to pay the Town of Carthage two per cent annually of the gross receipts received from the domestic sales of gas by such company. It was further alleged that it was necessary for the Town of Carthage to issue negotiable bonds in the amount of $290,000 and that said bonds were issued by said municipality under the provisions of Chap. 494 of the Laws of Mississippi 1950, bearing interest at the rate of 3½ per cent per annum and maturing with interest added in an appropriate equal amount in from one to twenty-five years from their date. It was further alleged that in order to accomplish said project it was decided by the Board of Mayor and Aldermen of the Town of Carthage to contract for the performance of required services, and that appellee thereafter received

the following proposal submitted by J. S. Love Company:

"Jackson, Mississippi
June 16th, 1950

"To the Mayor and Board of Aldermen
Town of Carthage
Carthage, Mississippi

"Gentlemen:

We have this day made a careful study of the many problems present in connection with your acquisition of a natural gas transmission and distribution system for the use of the Town of Carthage and the inhabitants thereof, and we felt because of our many years experience in the securities business generally and in the field of revenue bonds especially that we can render you a very valuable service in connection with the problems incident to the acquisition of such a system.

"We respectfully submit for your consideration the following:

"(a) We will secure the services of a competent and qualified engineer skilled in the design of natural gas distribution systems to make a preliminary survey and detailed plans and specifications for the installation of your natural gas system, and to supervise the installation of such system.

"(b) We will secure the services of competent and qualified attorneys to prepare all necessary resolutions, ordinances, and contracts in connection with the planning, construction and financing of a natural gas system, including validation of the bonds.

"(c) We will secure the approval of your bond issue as to legality by Charles & Trauernicht, nationally known bond attorneys of St. Louis, Missouri.

"(d) We will prepare a maturity and amortization table of the bond issue necessary to acquire a natural gas system by the Town of Carthage.

"(e) We will conduct all necessary negotiations with the Southern Natural Gas Company for a supply of natural gas for your natural gas system.

"(f) We will negotiate a contract with a private utility company for the lease of your natural gas system for a period of twenty-five (25) years, the general terms of which will include the company paying sufficient rental to retire all bonds and interest as the same mature, and for the maintenance and upkeep of the system during the lease period, and in addition thereto the payment to the Town of Carthage of two per cent (2%) annually of the gross receipts received from the domestic sales of gas by such company.

"(g) We will guarantee to purchase at par and accrued interest natural gas bonds in an amount not to exceed Two Hundred Ninety Thousand Dollars ($290,-000) payable solely and only from the revenues of the system at an interest rate not to exceed $3\frac{1}{2}\%$, maturing with interest added in an approximate equal amount from one (1) to twenty-five years (25) from their date.

"We sincerely believe our services will result in the Town of Carthage, and the inhabitants thereof, obtaining the benefit of natural gas much sooner than you could otherwise obtain these benefits.

"Our charge for all the above will be six per cent (6%) for engineering services, which is the usual customary fee for such services, and three per cent (3%) for attorneys fees and incidental expenses which includes a fee of one per cent (1%) for the attorney for the Town of Carthage, all based upon the amount of bonds actually delivered.

"The payment of the above fees are contingent upon the actual issuance and sale of bonds and the acquisition of a natural gas system by the Town of Carthage on or before July 1st, 1951.

Yours very truly,
J. S. LOVE COMPANY
By /s/ Howard Ivy
Howard Ivy

SOUTHERN BOND COMPANY
By /s/ Cecil E. Inman, Jr.
 Accepted by the Town of Carthage, Mississippi, this the 16th day of June, 1950, A. D.
 /s/ Fred L. McMillan
 *Mayor*
Attest:
/s/ B. M. Windham Fred L. McMillan''
 City Clerk''

 It was further alleged that the aforesaid proposal of J. S. Love Company was accepted by the board of mayor and aldermen by an order duly entered on its minutes on June 16, 1950, and that thereafter on August 25, 1950, the said board of mayor and aldermen passed a resolution ratifying and confirming the aforesaid contract with the said J. S. Love Company. It was further alleged that pursuant to said contract the said J. S. Love Company selected, with the approval of the said board of mayor and aldermen, Baxter F. Wade as the engineer to prepare plans and specifications for said project and that bonds in the amount of $290,000 were issued, bearing date of September 1, 1950, and were advertised for sale on sealed bids to be filed with the said board of mayor and aldermen up to 7:30 p. m. on September 15, 1950, and that at said sale, the said bonds were purchased by the said J. S. Love Company, and thereafter delivered to the said J. S. Love Company and the purchase price therefor paid to appellee. It was further alleged that under the employment of said engineer, he was to prepare the bond amortization schedules, secure the natural gas supply, and secure the certificate of public convenience and necessity from the Federal Power Commission, but that these services were accomplished through other sources and that the said engineer therefore allowed a credit of one per cent on the engineering cost, and that all other services required of the engineer having been performed by him, he was paid in full of his compensation the sum of $12,930. It was

further alleged that there was paid to J. S. Love Company and participated in by Southern Bond Company the total sum of $13,170 in full of the contract theretofore entered into between the appellee and the said J. S. Love Company. It was further alleged that the aforesaid payments were made after the completion of the said project and were made by the said board of mayor and aldermen in good faith and in the honest belief and upon the advice of counsel that it had legal authority to execute and perform the aforesaid contract entered into with the said J. S. Love Company. It was further alleged, however, that the appellee was without legal authority to make the said contract with the said J. S. Love Company and that said contract was ultra vires and was wholly void and beyond the power of the municipality to make. The bill prayed a money decree against J. S. Love, J. S. Love, Jr., Howard Ivy, Cecil Inman, and Cecil Inman, Jr., for the full sum of $13,170, less such amount as the court might find upon an accounting between the parties to have been reasonably and necessarily expended by the defendants and each of them in the performance of the aforesaid contract with the Town of Carthage, and prayed a discovery of such amounts as have been reasonably expended by the defendants in the performance of the contract. A copy of said contract and of the orders of the board and of communications made to the board were filed as exhibits to the amended bill. The defendants, who are the appellants here, filed separate demurrers to the amended bill, which demurrers were overruled, and the said defendants were granted an appeal to the Supreme Court to settle all of the controlling principles of the cause, and it is from the decree of the court below overruling said demurrers that this appeal is prosecuted.

The grounds of the demurrer are that the bill shows on its face that the contract which forms the basis of this suit has been completely performed on both sides, and that the allowances made thereunder by the appellee,

and for the recovery of which this suit is brought, were made for objects and purposes authorized by law.

Chap. 494 of the Laws of 1950, pursuant to which the appellee determined to erect and install natural gas transmission lines and facilities and a natural gas distribution system for supplying natural gas to the residents of the Town of Carthage, authorizes municipalities to acquire such projects and to issue bonds for the payment of the same at a rate of interest not to exceed six per cent per annum, maturing over a period not exceeding thirty-five years, to be sold by the governing authorities of the municipality in such manner and upon such terms as the said governing authorities shall determine, but in no event at a rate of interest to exceed six per cent per annum, the same to be payable solely from the revenues derived from the operation of the system acquired with the proceeds of the sale of such bonds. The act further authorizes the municipalities to enter into contracts with any person or corporation, public or private, for the sale of such bonds and that such contracts may contain such terms and conditions as may be agreed upon by and between the municipality and any purchaser of such bonds. The act further authorizes the municipality to adopt such ordinances and resolutions and to do all things and perform all acts necessary, proper, or desirable to effectuate the full intent and purpose of the act.

It is the contention of the appellant under the authority of the case of Causey v. Jones, et al., 193 Miss. 495, 10 So. 2d 356, that the powers thus conferred upon the municipality embraced not only the means and measures which were absolutely necessary but also all reasonably appropriate and useful means to the end to be accomplished, and which, in the judgment of the board of mayor and aldermen of the municipality, would most advantageously effect it. Appellants further invoked the rule announced in the case of Harkins v. City of West Point, 200 Miss. 716, 27 So. 2d 549, to the effect

that in the exercise of such powers the municipality has the choice of the means adopted to the end and is not confined to one method of operation. Hence it is contended by the appellants that under the powers expressly conferred upon municipalities by Chap. 494 of the Laws of 1950, the appellee had the authority to enter into the contract here involved. It is further contended by the appellants under the authority of City of Okolona v. Chickasaw County, 171 Miss. 424, 157 So. 690, Coahoma County v. Knox, 173 Miss. 789, 163 So. 451, Causey v. Gilbert, 193 Miss. 756, 10 So. 2d 451, and Craig v. Wheat, 212 Miss. 258, 54 So. 2d 383, that the contract in question having been completely performed on both sides, there can be no recovery back of payments made thereunder unless the municipality was wholly without power and capacity to enter into the same, or unless the same was beyond the scope of the authorized jurisdiction of the municipality. The argument of the appellants based upon the cited cases is that if the appropriation made under the contract was to an object authorized by law and not wholly beyond the power of the municipality, there can be no recovery back merely because of some procedural defect in the contract or other like matter which may appear to be insufficient or defective on subsequent examination.

It is further contended by the appellants that all of the proceedings in respect to the issuance and sale of the bonds were ratified, validated and confirmed by House Bill 749 of the Laws of 1952, and that the acts and proceedings of the municipality incident to the issuance of said bonds can not now be called into question.

On the other hand, the appellee contends that the contract in question was wholly beyond the power of the municipality to make and that the payments made thereunder constituted an appropriation to an object not authorized by law, and appellee relies chiefly upon the case of Mayor and Board of Aldermen of the City of Natchez v. Engle, et al., 211 Miss. 380, 51 So. 2d 564.

The Natchez case involved a project for extending the water and sewer systems of the City of Natchez and a contract entered into between the City of Natchez and a group of investment banking firms providing for the rendition of certain services, including legal and engineering services, in connection with the issuance of bonds by the city in the completion of a project for the extension of the water and sewer systems of the city. In the Natchez case, the contract had been entered into but not performed at the time of the institution of that suit and the purpose of the suit was to cancel the contract upon the grounds that the Board of Mayor and Aldermen of the City of Natchez were not authorized to enter into the same. It was held in the Natchez case that the powers of a municipal corporation are wholly statutory and that every person who deals with such a board is bound to know the extent of its authority and the limitations on its powers, citing Edwards House Co. v. City of Jackson, 138 Miss. 644, 103 So. 428, 42 A. L. R. 625; Steitenroth v. City of Jackson, 99 Miss. 354, 54 So. 955; 38 Am. Jur., p. 182. It was further held in the Natchez case that under Chap. 325 of the Laws of 1946, which was then in effect, and which provided for the advertisement and sale of bonds on sealed bids, that the municipality was without authority to employ an agent to negotiate the sale of bonds, and was without authority to pay a fee or commission to a group of investment bankers to guarantee the sale of such bonds and that the governing authorities of a municipality have no right to delegate to a group of investment bankers the power and authority to procure for the municipality the necessary legal and engineering services which may be required to enable the municipality to issue and sell its revenue bonds and to construct the public utility improvements contemplated in the contract which was there under review. The appellee relies upon the authority of the Natchez case to support its contention that the decree of the court below should be affirmed and invokes the principles therein

announced as being controlling in the case now before us, and we think that there is merit in this contention.

The appellants, however, say that the Natchez case is distinguishable from the case at bar for the reason, first, that the Natchez case was controlled by Chap. 325 of the Laws of 1946, whereas the case at bar is controlled by Chap. 494 of the Laws of 1950; and, next, that the contract in the case at bar has been completely performed on both sides, whereas in the Natchez case the contract was wholly executory; and, next, that the contract here involved is not ultra vires in the sense that it was beyond the power and capacity of the municipality to make, whereas in the Natchez case the contract was utterly void and beyond the power of the municipality to enter into, and next, that all proceedings in the present case relating to the issuance and sale of bonds have been ratified, validated, and confirmed by the general validating statute of 1952, which condition was absent in the Natchez case. We think that the fact that the present case is controlled by Chap. 494 of the Laws of 1950, and that Chap. 325 of the Laws of 1946 was applicable to the Natchez case, fails to distinguish in principle the two cases. Bearing in mind that ██ the powers of a municipality are wholly statutory and that ██ every person who deals with the municipality is bound to know the extent of its authority and the limitations on its powers, ██ there is nothing in either Chap. 494 of the Laws of 1950 or Chap. 325 of the Laws of 1946 which authorizes a municipality to employ an agent to sell its bonds, or to enter into a pre-election contract for the sale of such bonds, or to delegate to a group of investment bankers or a group experienced in the securities business generally and in the field of revenue bonds especially, the power and authority to procure for the municipality necessary legal and engineering services required in connection with the construction of public utility improvements and to pay a fee therefor. Neither of the acts in question expressly or by implication confers such powers

upon the municipality. We may assume, therefore, as contended by the appellants, that Chap. 494 of the Laws of 1950 repealed by implication Chap. 325 of the Laws of 1946, since neither of said acts expressly or by implication conferred upon municipalities the authority to perform those acts which the Natchez case held to be beyond the power of the municipality. We think the principle is sound that where the contract has been completely performed on both sides and it is not one beyond the power and capacity of the municipality to enter into or one beyond the authorized scope of the municipality, there can be no recovery back of payments made thereunder because of procedural defects or other insufficiencies in the proceedings leading to the appropriation. The fallacy of the argument of the appellant in this connection is, however, that there is no question here of procedural defects or insufficiencies in the proceedings leading to the payments made the appellants under the contract here in question. It is undoubtedly true that the appellee had the authority to procure and pay for necessary legal services, and to sell its bonds after the same had been authorized by the qualified electors at an election called for such purpose, and to enter into a contract with the purchaser of said bonds upon such terms as the appellee and the purchaser may have agreed upon, but there is nothing in the statute which authorized the appellee to pay a fee or commission to an agent or a third person for services rendered in procuring legal services to be performed or to pay a fee or commission to a group experienced in the securities business and the field of revenue bonds especially, to contract in advance of the election for the purchase of such bonds.

We do not think that the case of Causey v. Jones, et al., supra, is at variance with the views here expressed. In the Causey case, the County of Newton, being in financial difficulties, sought to avail itself of the provisions of the general refunding act of 1934, Chap. 143, and it sought and employed the assistance of persons expert in the

business of bond refunding. Such experts were employed direct by the county to perform a particular service which the court held in that case to be necessary for the accomplishment of the ends sought. ██ We think this presents an entirely different situation from that prevailing in a case where the municipal authority undertakes to employ a third person to engage and provide legal services and to agree in advance of an election to purchase bonds to be issued and to pay a fee for such services. ██ The illegality in the present case is not because of the want of power on the part of the appellee to directly employ counsel or to sell its bonds in an orderly way after the same have been authorized by the qualified electors at an election called for such purposes, but it exists by reason of the agreement to pay to a third party or parties a fee or fees for the services contracted for, thus entailing an additional appropriation to an object not authorized by law, namely, the payment of such additional fees.

The bill offers to do equity in that it offers to hold the appellants harmless on account of any and all expenses that they incurred by way of performance of the contract in question and seeks recovery only of the sum paid to the appellants less such an amount as on discovery and an accounting might appear to have been reasonably and necessarily expended by the appellants in performance of said contract. Hence it is sought to recover only that portion of the payment to the appellants which constituted their sole compensation and constituted an appropriation to an object not authorized by law.

We have given due consideration to the argument of the appellants that the general validating statute of 1952, being House Bill 749, validated and confirmed the contract here in question and we are of the opinion that this contention is untenable. ██ We do not think that this validating act extended the power of the municipality to do that which was clearly outside of its authority, that

is to say, to make an appropriation not authorized by law. Planters Bank of Clarksdale v. Yazoo-Coldwater Drainage District, 156 Miss. 297, 126 So. 9.

In the light of the views expressed, we are of the opinion that the chancellor was correct in overruling the demurrers, and accordingly the decree of the court below is affirmed and the cause remanded.

Affirmed and remanded.

*McGehee, C. J.,* and *Lee, Arrington,* and *Ethridge, JJ.,* concur.